# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01238-SCT

*JULIAN MINGO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2005 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL: BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/07/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DIAZ AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     A Lowndes County jury convicted Julian Mingo of three counts of fondling a fifteen-year-old boy.  Mingo was sentenced to three ten-year terms of imprisonment, to be served consecutively, followed by five years of post-release supervision.  On appeal, Mingo challenges various rulings by the trial judge, the sufficiency of the evidence supporting his

conviction, and the length of his sentence.[1]  Finding each of Mingo's claims to be without merit, we affirm the judgment of conviction and the sentence imposed.

## FACTS

¶2.     Julian Mingo was employed as the band and choral director at a private school in Lowndes County, Mississippi.  The victim, who was fourteen years old at the time the relevant incidents began, was a student at the school with an interest in the fine arts.  The victim's parents hired Mingo as a private voice coach in the summer of 2004, believing that private instruction would help their son get admitted to a school for the performing arts.

¶3.     The lessons were conducted in the school's band hall, often in a small private practice room.  At the victim's first lesson in early June, Mingo informed the victim that he might use some "weird techniques" to train the victim.  At the second lesson on June 16, 2004, Mingo led the victim to a small private practice room and reminded him of his "weird techniques." Mingo then turned off the lights, stood behind the victim, and began fondling him.  He told the victim not to tell anyone.  The victim continued to take lessons from Mingo over the summer and into the fall.  Over the course of the lessons, Mingo repeatedly fondled the victim.

¶4.     The victim finally told a friend about Mingo's actions on October 19, 2004.  The victim's friend told another classmate of the victim on October 20.  This classmate asked the victim about the allegations and took him to the school counselor to have the victim explain what had happened.  The counselor called the school headmaster who, in turn, called the chief of police.  The chief of police interviewed the victim, gave him a small tape recorder

---

[1]Mingo raises fourteen issues on appeal, which we have consolidated into twelve.

to put in his pocket, and asked him to confront Mingo in his office. The victim went to Mingo's office at the beginning of an afternoon class and asked him why he had fondled the victim. Mingo apologized repeatedly and said that he would stop. After the victim left Mingo's office and went back to the police chief, Mingo left his office and gave a speech to his students about the importance of forgiveness.

¶5. Later that afternoon, the parent of another student, who had heard about the allegations against Mingo, went to the school and confronted him. Mingo admitted touching the student, but said there had been a misunderstanding. At the end of the school day, the school's headmaster asked Mingo to leave the school until the matter was resolved.

¶6. The victim gave a more extensive statement to the police on October 20th. Based on his statement, the Columbus police sought to interview Mingo. They asked the headmaster to contact Mingo and ask him to come to the police station for questioning. Mingo went to the police station voluntarily to give a statement in the afternoon on October 20th. Although he was not placed in custody at that time, he was advised of his *Miranda* rights and signed a waiver indicating that he understood those rights. In his statement to police, Mingo admitted touching the victim. Mingo consented to having his home searched, and, in the course of their search, the police found an eight millimeter tape of a young male performing a sexually explicit act.

¶7. After being convicted of three counts of fondling and being sentenced to three ten-year terms, to run consecutively, Mingo appeals.

## DISCUSSION

**(1)  Legality of Arrest**

3

¶8.     Mingo claims that his arrest was without probable cause since it was based solely on the testimony of the victim. Determinations of reasonable suspicion and probable cause are reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999). However, we will conduct a de novo review of the trial judge's determination "based on historical facts reviewed under the substantial evidence and clearly erroneous standards." *Dies v. State*, 926 So. 2d 910, 917 (Miss. 2006) (citing *Floyd*, 749 So. 2d at 113).

¶9.     Mingo significantly misstates the record in implying that he was arrested after the victim gave a statement to the police. The record reflects that after the police took the victim's statement, Mingo was asked to come to the police station to answer questions concerning the accusations of the victim. He voluntarily agreed to give a statement and was not arrested until after he had given the statement. The statements of the victim and Mingo's own corroboration were more than sufficient to establish probable cause.

¶10.    Even if Mingo had been arrested in response to the victim's statement, Mingo cites no authority for the principle that a witness' testimony is insufficient to establish probable cause. The State persuasively argues that since the uncorroborated testimony of a victim can provide the basis for a finding of guilt beyond a reasonable doubt, *see Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998), it must by definition suffice for the lesser finding of probable cause.

¶11.    This claim is without merit.

**(2)     Admissibility of Statement**

4

¶12. Mingo argues that his statement to police before his arrest is inadmissible because he was not properly given his *Miranda* warnings. The threshold question in a *Miranda* rights analysis is whether the defendant was in custody and being interrogated when the statement in question was made. *Drake v. State*, 800 So. 2d 508, 513 (Miss. 2001). A person is "in custody" if a reasonable person would feel that they were going to jail and not just being temporarily detained. *Godbold v. State*, 731 So.2d 1184, 1187 (Miss. 1999). Whether a reasonable person would feel that she was "in custody" depends on the totality of the circumstances, and may include factors such as: (a) the place of interrogation; (b) the time of interrogation; (c) the people present; (d) the amount of force or physical restraint used by the officers; (e) the length and form of the questions; (f) whether the defendant comes to the authorities voluntarily; and (g) what the defendant is told about the situation. *Hunt v. State*, 687 So. 2d 1154, 1160 (Miss. 1996). If a person is determined not to be in custody and is not being interrogated, the *Miranda* protections do not attach. Voluntary statements made by a defendant do not trigger the requirements of *Miranda*. *Drake*, 800 So. 2d at 513

¶13. As noted above, Mingo voluntarily went to the police station, was told about the victim's accusations, and agreed to give a statement to police. He was not placed under arrest before questioning, and the officers emphasized that he was free to end his questioning at any time. Given these circumstances, Mingo was not "in custody" and, therefore, was not entitled to the *Miranda* protections. Nevertheless, out of caution the officers did read Mingo his *Miranda* warnings, and Mingo signed a waiver indicating that he fully understood those rights. During a hearing on pretrial motions, Mingo conceded that he had been given his *Miranda* warnings and had fully understood his rights. This claim is without merit.

5

**(3)    Rulings on Issuance of Two Subpoenas**

¶14.    Mingo claims that the trial court erred in denying him access to his personal notes and documents contained in his desk at the academy and to the records of Cole Refrigeration, a company that worked at the academy during the summer in 2004.  We review a trial court's rulings on matters of evidence, relevancy and discovery violations for an abuse of discretion. *Flora v. State*, 925 So. 2d 797, 819 (Miss. 2006) (citing *Montgomery v. State*, 891 So. 2d 179, 181 (Miss. 2004)).

¶15.    Regardless of Mingo's claims to the contrary, the record indicates that the trial judge was willing to issue a limited subpoena duces tecum for any personal writings of Mingo held by the school, but denied Mingo access to the victim's school record.  The court issued the limited subpoena, but it does not appear that the school withheld any of Mingo's personal writings.  We do not review allegations of error that are unsupported by the record. *See, e.g.,* *Ferrell v. River City Roofing, Inc.*, 912 So. 2d 448, 457 (Miss. 2005) ("[T]his Court declines to review such bare allegations[,] . . . which are not supported by the record on appellate review."); *Vinson v. Johnson*, 493 So. 2d 947, 950 (Miss. 1986) ("this Court will not review any allegation of error which is unsupported by the record.").  There is no indication that the trial court abused its discretion in its ruling.

¶16.    Mingo claims that Cole Refrigeration's records would show that he was not alone with the victim at the band hall on certain dates referenced in the indictment.  The trial judge contacted the president of Cole Refrigeration, who informed him that the company did not work in the band hall.  The trial judge therefore denied the subpoena as irrelevant to the case and informed defense counsel that, if he wanted to challenge the ruling, he could subpoena

6

the president of the company to testify. There is nothing in the record indicating that Mingo chose to subpoena Cole's president. The trial judge did not abuse his discretion in denying the subpoena. *See Johnson v. Fargo*, 604 So. 2d 306, 309 (Miss. 1992) ("A trial judge has the discretion to exclude irrelevant evidence.").

¶17. These claims are without merit.

**(4)** *Batson* **Rule Violation**

¶18. During voir dire, Mingo challenged four of the State's peremptory strikes against African-American jurors, claiming that they violated the *Batson v. Kentucky* rule requiring the State to provide race-neutral reasons for exercising peremptory strikes. 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Our standard of review for such claims is well settled:

> [The] standard of review for *Batson* claims . . . accords "great deference" to a trial judge's factual findings, reversing only where the finding of the lower court was clearly erroneous or against the overwhelming weight of the evidence. "Great deference" has been defined in the *Batson* context as insulating from appellate reversal any trial findings which are not "clearly erroneous." This deference specifically includes a trial judge's determination of any racially discriminatory motive underlying any articulated reasons given.

*Baldwin v. State*, 784 So. 2d 148, 155 (Miss. 2001) (citations omitted).

¶19. Mingo objects to the striking of four African-American veniremen. The first was struck because he lived in a high-crime area; the second, because she had written a number of bad checks and had been referred to the district attorney's bad check unit; the third, because she failed to indicate that she had a son on probation when asked by the State; and the fourth, because she had a written bad checks and had been referred to the district

7

attorney's bad check unit, and because she had a friend or close relative who was being prosecuted by the district attorney.

¶20.    Each of these reasons has been recognized by this Court as race-neutral. *See*, *e.g.*, ***Snow v. State***, 800 So. 2d 472, 482 (Miss. 2001) (striking a juror because of prior history of writing bad checks is race-neutral reason)*;* ***Baldwin v. State***, 784 So. 2d 148, 155 (Miss. 2001) (living in a high crime neighborhood constitutes a valid race-neutral reason)*;* ***Magee v. State***, 720 So. 2d 186, 190 (Miss. 1998) (striking juror because a family member had been convicted or charged with a crime is a valid race-neutral reason)*;* ***Lockett v. State***, 517 So.2d 1346 (Miss. 1987) (articulating a non-exhaustive list of race-neutral justifications). Nothing in the record indicates that the State's use of peremptory strikes against veniremen was pretextual or discriminatory. Moreover, three African-American veniremen were seated on the jury.

¶21.    This claim is without merit.

**(5)    Motion to Suppress the Video of the Victim's Statement to Police**

¶22.    Mingo claims that the admission of the video of victim's statement to the police violated the confrontation clause of Sixth Amendment. After the victim testified, the State called the interviewing officer to the stand. During his testimony, the State moved to admit the video of the victim's statement. The trial court denied the State's motion, finding that video did not meet any of the exceptions to the hearsay rule under M.R.E. 802. During cross-examination, defense counsel implied that the tape had been fabricated. While conducting redirect examination of the interviewing officer, the State again moved to admit the tape as

8

a prior consistent statement under M.R.E. 801(d)(1)(B) in rebuttal to defense counsel's inferences. The trial court granted this motion.

¶23. Mingo did not object to the introduction of the video as a violation of the confrontation clause at the trial level. The constitutional right of confrontation, like other constitutional rights, is forfeited if it is not asserted at the trial level. *Rogers v. State*, 928 So. 2d 831, 838 (Miss. 2006); *see also Stockstill v. State*, 854 So. 2d 1017, 1023 (Miss. 2003); *Ellis v. Ellis*, 651 So. 2d 1068, 1073 (Miss. 1995). Because Mingo did not claim a constitutional violation in the trial court, he is procedurally barred from doing so here.

¶24. Even if Mingo had properly preserved the issue for appeal, his claim is without merit. The victim testified at the trial, and Mingo had the opportunity to extensively cross-examine him; therefore his right to confront witnesses against him was not violated. Mingo's reliance on *Offor v. Scott*, 72 F.3d 30 (5th Cir. 1995), is misplaced. There, the videotaped statement was the first piece of evidence offered by the prosecution and was offered as direct evidence of Offor's guilt. *Id.* at 31, 33. The victim did not testify and was not cross-examined. The case before this Court is clearly distinguishable. The video in this case was not offered as direct evidence, and the witness testified and was cross-examined. The admission of the videotape did not violate the confrontation clause.

¶25. This claim is without merit.

**(6)     Exclusion of Proposed Expert Witness**

¶26. The day before the trial began, Mingo provided the prosecution with the name of a proposed expert witness on voice training and a lay witness who was to testify to Mingo's whereabouts on one of the dates referenced in the indictment. The State moved to have the

9

expert excluded. The trial judge granted the motion to exclude the expert witness, but admitted the testimony of the lay witness.

¶27. The standard of review regarding admission or exclusion of evidence is abuse of discretion. *Parks*, 884 So. 2d at 742. We will not reverse the trial court's evidentiary ruling unless the error adversely affects a substantial right of a party. *Id.* It is appropriate to exclude a witness's testimony where the failure to present the witness in a timely manner is willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence. *Beckwith v. State*, 707 So. 2d 547, 575 (Miss. 1997).

¶28. The trial judge carefully considered Mingo's proffers and, relying on *Beckwith*, found that the belated presentation of Mingo's expert was motivated by a desire to obtain a tactical advantage. On the same motion, he accepted the lay witness with the understanding that the State would have an opportunity to interview her before the trial commenced. The trial judge did not abuse his discretion.

¶29. This claim is without merit.

**(7)    Admission of an Eight Millimeter Videotape**

¶30. Mingo makes two claims concerning the admission of an eight millimeter videotape seized from his home that depicted a young male engaged in a sexually explicit act. First, he claims that the State committed a discovery violation by failing to provide him with a copy of the tape. Second, Mingo claims that the trial court erred in admitting the tape because it was evidence of prior bad acts in violation of M.R.E. 404(b). The standard of

review for the rulings of a trial court of evidence and discovery violations is abuse of discretion. *Flora*, 925 So. 2d at 819.

¶31. Mingo is disingenuous in claiming that the State erred by denying him a copy of the 8 millimeter videotape. In the pre-trial hearings on the admissibility of the videotape, the State specifically inquired whether Mingo possessed a copy of the videotape from a related and contemporaneous charge, and Mingo confirmed that he did. When the videotape was admitted during the State's rebuttal examination, Mingo reversed himself and stated that he did not possess a copy of it. The State maintained that the videotape was in the possession of the police, and that they would provide a copy if Mingo requested it. The trial judge agreed that videotape was available to Mingo. Although there is some dispute whether Mingo did in fact request a copy of the videotape, the record demonstrates that the trial judge was within his discretion in finding that Mingo was not impermissibly denied a copy.

¶32. Mingo is similarly mistaken in claiming that the videotape was admitted as evidence of prior bad acts under M.R.E. 404(b). When the State first moved to introduce the videotape as a part of its case-in-chief, the trial judge found it inadmissible under M.R.E. 404(b) and emphasized that the tape could not be used to prove that Mingo had homosexual tendencies because Mingo had not denied that he did. *Cf. Florence v. State*, 755 So. 2d 1065, 1071 (Miss. 2000) (finding that sexually explicit homosexual magazines and videotapes were admissible in a sexual battery case when the defendant had "opened the door" to such evidence by denying that he was a homosexual). However, the court recognized that the videotape might be admissible under an exception to M.R.E. 404(b) on the State's rebuttal. The trial judge ultimately admitted the videotape as an exception to M.R.E. 404(b) to show

11

intent and absence of mistake because Mingo claimed on direct examination that, if he had touched the victim inappropriately, he had done so accidentally. ***Kolb v. State***, 542 So. 2d 265, 269 (Miss. 1989) (evidence of particular sexual urges was admissible to rebut a claim of accident).

¶33.   The record shows that the trial judge was acutely aware of the potentially prejudicial character of the videotape and was careful to admit the tape only to rebut the claim of accident.   He allowed no questioning about the age of the young male in the video, did not allow the State to mention the related charges against Mingo for possession of the videotape, and gave a limiting instruction to the jury on the use of the evidence.   On balance, the trial judge acted prudently and within his discretion.

¶34.   Because Mingo was not impermissibly denied access to the videotape and because the videotape was not admitted as evidence of prior bad acts, this claim is without merit.

**(8)     Admission of Testimony of Rebuttal Witnesses**

¶35.   Mingo contends that the admission of the rebuttal testimony of two witnesses was erroneous because their names had not been disclosed during discovery.

¶36.   Tabitha Pate, an operations officer at the National Bank of Commerce, testified that her bank cashed a check dated June 16, 2004, from the victim's father to Mingo on June 18, 2004.  Her testimony was introduced to rebut Mingo's claim that he had not given the victim a lesson on June 16, one of the dates in the indictment.

¶37.    Sara Richert, a licensed practicing nurse, testified to the location of the diaphragm on the human body.  Her testimony was introduced to rebut Mingo's claim about the location of the diaphragm.

¶38.   The standard of review regarding admission or exclusion of evidence is abuse of discretion. *Parks v. State*, 884 So. 2d 738, 742 (Miss. 2004) (citing *Ladnier v. State*, 878 So. 2d 926 (Miss. 2004)).   In addition, the State has no duty to provide the defense with the names of possible rebuttal witnesses, unless the State has requested notice of an alibi defense. *Smith v. State*, 724 So. 2d 280, 320 (Miss. 1998); *Deal v. State*, 589 So. 2d 1257, 1259 (Miss. 1991).   The testimony of the rebuttal witnesses was introduced to rebut specific facts alleged by Mingo during direct and cross-examination.   The trial judge did not abuse his discretion in admitting the testimony.

**(9)     Denial of Change of Venue**

¶39.   Mingo claims that the trial court improperly denied his motion for a change of venue. Mingo did not move for a change of venue during voir dire; instead, he notified the court of his motion during his own case-in-chief.   He argued that given the alleged bias of the trial judge, the media coverage of his trial, a defense witness' concerns for her safety, and an allegedly uncooperative police department, the trial court should transfer the trial.   The court found that the motion was untimely and denied it.

¶40.   The decision to grant the venue change is in the sound discretion of the trial judge. *Gray v. State*, 799 So. 2d 53, 62 (Miss. 2001).   We will not disturb the ruling of the lower court where the trial judge did not abuse his discretion in denying the change of venue motion. *Id.*   It is also well accepted that an application for a change of venue must strictly conform to the statutory requirements of  Miss. Code Ann. § 99-15-35 (Rev. 2000) which requires that the motion be in writing, and supported by the affidavits of two or more credible persons. *Baldwin v. State*, 732 So.2d 236, 241 (Miss. 1999).   Change of venue motions have

13

been properly denied where they were not supported by affidavits of two or more credible persons. *Gilliard v. State*, 428 So. 2d 576, 579 (Miss. 1983), *overruled on other grounds*, *Willie v. State*, 585 So. 2d 660 (Miss. 1991).

¶41. Mingo's motion is both procedurally barred and substantively without merit. Mingo's motion was not in writing, was not supported by the affidavits of two or more credible persons, and was therefore procedurally barred. In addition, the trial court found that the allegations of judicial bias were unfounded, that the sheriff's department had not been uncooperative, that third-hand evidence of threats against one of Mingo's witnesses was inadmissible hearsay, and that the jury had affirmed during voir dire testimony that media coverage of Mingo's trial would not affect their impartiality. On review of the record, each of the trial court's determinations was supported by ample credible evidence.

¶42. This claim is without merit.

**(10) Motion for Recusal**

¶43. Late in the trial, during the defense's case-in-chief, Mingo made a motion for the trial judge to recuse himself, which was denied. Mingo argues that the denial of the motion was error because: (a) the trial judge ruled against Mingo on a number of motions, including denying the motions to suppress and to exclude an untimely witness, and refusing to issue a subpoena for certain documents, all of which have been discussed above; (b) the judge strongly censured Mingo's attorney for attempting to suggest to the jury that the victim was racist without submitting any evidence to the court on that issue; and (c) the trial judge held Mingo's attorney in direct criminal contempt when he refused to continue with the trial.

14

¶44. When we review a denial of recusal, we "will look to the whole trial and pass upon questions on appeal in the light of the completed trial . . . and if we are unable to find that rulings have been prejudicial to the defendant, we will not reverse." *Brown v. State*, 829 So. 2d 93, 99 (Miss. 2002).

### (a) Denial of Motions

¶45. The trial judge made a number of rulings against Mingo before and during trial. For the purposes of recusal, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Farmer v. State*, 770 So. 2d 953, 958 (Miss. 2000).

¶46. Mingo cites no authority to show that adverse rulings by a trial judge indicate bias. The record contains no indication that the trial judge was unreceptive or dismissive of Mingo's arguments. We will not find adverse rulings to demonstrate bias simply because they are adverse. Finally, we have addressed the rulings on these motions on the merits and have found that the trial court was within its discretion to deny Mingo's motions.

### (b) Censure by the Trial Judge

¶47. During his cross-examination of the victim, defense counsel asked the victim whether he had gotten angry at a black student at the academy. The State objected, and the trial judge excused the jury from the courtroom to hear the parties' arguments. Defense counsel conceded that he believed the victim, who is white, had animosity towards Mingo, who is black, because of his race. The trial judge found that Mingo had not subpoenaed the child in question, had not suggested that race was a factor during pre-trial discovery, and had not

15

mentioned the issue until he did so in front of the jury. The trial judge further found that the actions of defense counsel violated rules of reciprocal discovery and threatened to report defense counsel to the Mississippi Bar if he attempted to bring up the issue without submitting evidence or adhering to the rules of discovery.

¶48. It is prejudicial error for questions on cross-examination to contain insinuations and intimations of conduct for which there is no basis in fact. *Flowers v. State*, 842 So. 2d 531, 553 (Miss. 2003) (citing *Walker v. State*, 740 So. 2d 873, 884 (Miss. 1999)). Such questioning without evidentiary basis is inflammatory and extremely prejudicial. *Walker*, 740 So. 2d at 884. No party should be permitted as a deliberate trial tactic to decide in advance of trial to withhold a part of his case in chief, but instead attempt to suggest such evidence in cross-examination of the witnesses for the opposing side. *Hosford v. State*, 525 So. 2d 789, 791 (Miss. 1988).

¶49. Mingo attempted to interject the issue of race into his case without preparing an evidentiary foundation for doing so. The trial court was correct in holding Mingo to the rules of discovery. *See Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 864 (Miss. 2004) (courts have the authority to sanction violations of the rules of discovery under both their inherent authority and Miss R. Civ. P. 37(b)). Mingo cites no authority in support of his claim that the trial judge's censure constituted bias. The claim that the trial judge's censure constituted impermissible bias is without merit.

### (c)     Finding of Direct Criminal Contempt

¶50. Our approach to contempt matters is well settled:

16

> Generally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than the Supreme Court. When dealing with contempt matters, we must first determine whether the alleged contempt is either civil or criminal in nature. If the contempt is civil, the proper standard utilized for review is the manifest error rule. If the contempt is criminal, then we will proceed ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt. If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. . . . Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order.

*In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002) (citations omitted). Contempt may be direct, occurring in the presence of the court, or indirect, occurring outside the presence of the court. *Id.* at 237. Direct criminal contempt includes words or actions before the court that tend to embarrass the court or prevent the orderly administration of justice. *Jordan v. State*, 216 Miss. 542, 62 So.2d 886, 888 (1953).

¶51. A summary of the events preceding the trial judge's finding of criminal contempt is warranted.[2] On the morning of May 24, 2004, the court convened out of the presence of the jury to consider proposed jury instructions. Mingo did not appear for trial as required, and Mingo's attorney admitted that he told Mingo not to come to court. The State moved for a judgment nisi against Mingo, which the trial court granted. Mingo was brought to court later that morning.

---

[2]Testimony relative to the contempt ruling covers approximately 63 pages of the record immediately preceding the trial judge's finding of direct criminal contempt.

¶52.    After Mingo's arrival, his attorney asked the judge to consider alleged threats that had been made against Mingo and his witnesses.  Mingo's attorney alleged that unknown third persons had told a witness that they had heard the victim and a friend talk about hurting Mingo, and the same witness had been told that another unknown third person had threatened to burn down her house.  Based on these allegations, Mingo's attorney moved for a mistrial, for a change of venue, and for the trial judge to recuse himself because of bias.  The trial judge denied each of the motions, noting that the statements were inadmissible hearsay, and that he would ask the police to investigate any allegations of witness intimidation.  He further noted that he had gone to great lengths to accommodate Mingo's attorney, including directing the county sheriff to serve subpoenas for the defense, and that, consequently, the charge of his being biased against Mingo was without merit.  Mingo's attorney argued that he was not prepared to consider proposed jury instructions, and the trial judge called a noon recess to allow Mingo's attorney to review them.

¶53.    When the court reconvened that afternoon, Mingo's attorney announced that he was unwilling to continue representing his client.  The State noted that one of Mingo's witnesses refused to speak to the State's investigators, and Mingo's attorney admitted that he had told the witness not to speak to the investigator.  Mingo's attorney again alleged that threats had been made against his witnesses and his client, and that these threats warranted a mistrial.  He again stated his intent to withdraw from the trial.  The trial judge found the attorney's motion to withdraw was not well taken.  Mingo's attorney again refused to continue his representation, and the trial judge called a recess and contacted the Mississippi Bar.  After the court reconvened, Mingo's attorney again alleged that his client and witnesses had been

18

threatened. The trial judge offered to call the Highway Patrol to investigate the allegations. Mingo's attorney again requested a mistrial or a continuance and a change of venue in the alternative. After the trial court refused the motion, the following exchange occurred:

> BY THE COURT: Now, I propose to bring the jury out. Do you have the next witness that you wish to call?
>
> BY MR. MILLER: No, your Honor, I do not.
>
> Q. So you're going to rest?
>
> A. No, your Honor, I'm not.
>
> Q. All right. You are telling me then outside of the presence of the jury that you will not proceed on this case?
>
> A. I cannot help Mr. Mingo at this point, your Honor, and it is my professional responsibility to announce that to the court.
>
> Q. Then it is my professional responsibility as the trial judge and the Circuit Judge in this district and to make sure that we have the orderly control of cases to have the sheriff's deputy stand, and I'm going to find that you are in direct criminal contempt and you will be taken to jail. I will recess this matter until nine o'clock tomorrow morning. If you wish to proceed at that time, I will bring you back in.

¶54. Defense counsel's refusal to continue with trial clearly constituted an action tending to prevent the orderly administration of justice. The trial judge's decision to hold counsel in direct criminal contempt, while serious, was within his discretion. Reviewing the record, we find no bias or impropriety by the trial judge in his rulings.

¶55. This claim is without merit.

**(11) Sufficiency of the Evidence**

19

¶56. Mingo claims that the trial court erred in denying a directed verdict because the evidence was insufficient to support a conviction. In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged and that he did so under such circumstances that every element of the offense existed. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005). This inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984).

¶57. Mingo falls far short of his burden of showing that the character and weight of the evidence was such that no reasonable juror could have found Mingo guilty. The State proffered direct evidence in the form of the victim's testimony and Mingo's statement to police. Despite Mingo's assertions to the contrary, such evidence is not circumstantial. *Garrett v. State*, 921 So. 2d 288, 291-92 (Miss. 2006). Mingo also alleges inconsistencies between the victim's testimony and that of other witnesses. However, determinations of witness credibility are matters for a jury to decide. *Hughes v. State*, 724 So. 2d 893, 896 (Miss. 1998). Though no direct evidence was presented that Mingo touched the victim specifically to satisfy his lustful desires, this Court has held that such recognition may arise

20

from the circumstances of the encounter itself. *Ladnier v. State*, 878 So. 2d 926, 930 (Miss. 2004) (citing *Bradford v. State*, 736 So. 2d 464, 466 (Miss. Ct. App. 1999)).

¶58.    Taking all the evidence supporting the verdict as true, together with all reasonable inferences, it is clear that a reasonable juror could have found Mingo guilty.

¶59.    This claim is without merit.

**(12)    Cruel and Unusual Punishment**

¶59.    Mingo argues that his three ten-year sentences, to be served consecutively, are disproportionate to the crime and violate the Eighth Amendment to the United States Constitution. Mingo was convicted under Miss. Code Ann. § 97-5-23 (2006), and the judge ordered that the sentences run consecutively under Miss. Code Ann. § 99-19-21 (2006).

¶60.    As a general rule, "when sentences are within the limits of the statute, the imposition of such sentences is within the sound discretion of the trial court and this Court will not reverse them. . . . Likewise, we have held that providing punishment for crime is a function of the legislature, and, unless the punishment specified by statute constitutes cruel and unusual treatment, it will not be disturbed by the judiciary." *Presley v. State*, 474 So. 2d 612, 620 (Miss. 1985). We review sentences in light of the factors articulated by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Nichols v. State*, 826 So. 2d 1288, 1290 (Miss. 2002). Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate and will not be disturbed on appeal. *Fleming v. State*, 604 So. 2d 280, 302-03 (Miss. 1992). Finally, this State recognizes that it is within

21

the trial court's discretion whether multiple sentences will run concurrently or consecutively Miss. Code Ann. § 99-19-21(1).[3]

¶61.    The sentences imposed by the trial judge in the present case are within the limits set by statute, and the decision to have the sentences run consecutively was within the sound discretion of the judge.  Because we find no abuse of discretion in the trial court's decision, we will not disturb his ruling on appeal.

¶62.    This claim is without merit.

**CONCLUSION**

¶63.    For the reasons set forth above, we affirm the circuit court's judgment.

¶64.    **COUNT I: CONVICTION OF FONDLING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE IS TO RUN CONSECUTIVELY WITH THE SENTENCES IMPOSED IN COUNTS II & III FOR A TOTAL OF THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOLLOWED BY FIVE (5) YEARS OF POST RELEASE SUPERVISION.  COUNT II: CONVICTION OF FONDLING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SAID SENTENCE IS TO RUN CONSECUTIVELY WITH THE SENTENCES IMPOSED IN COUNTS I & III FOR A TOTAL OF THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOLLOWED BY FIVE (5) YEARS OF POST RELEASE SUPERVISION. COUNT III: CONVICTION OF FONDLING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SAID SENTENCE IS TO RUN CONSECUTIVELY WITH THE SENTENCES IMPOSED IN COUNTS I & II FOR A TOTAL OF THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF**

---

[3] Miss. Code Ann. § 99-19-21(1):  "When a person is sentenced to imprisonment on two (2) or more convictions, the imprisonment on the second, or each subsequent conviction shall, in the discretion of the court, commence either at the termination of the imprisonment for the preceding conviction or run concurrently with the preceding conviction."

**CORRECTIONS FOLLOWED BY FIVE (5) YEARS OF POST RELEASE SUPERVISION.**

**SMITH, C.J., COBB, P.J., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., NOT PARTICIPATING.**