KITCHENS, JUSTICE,
DISSENTING:
¶18. The record does not establish, beyond a reasonable doubt, that Greg Spore’s post-ruling efforts to speak to Judge Weill were calculated to prevent the orderly administration of justice, nor does the record demonstrate that he was, in any way, disrespectful to the judge. Because I would reverse the judgment of the Circuit Court of the First Judicial District of Hinds County and render judgment in Spore’s favor, I respectfully dissent.
¶19. “A judge issues a citation for criminal contempt to vindicate the dignity and authority of the court. This is proper only when the contemnor has willfully, deliberately and contumaciously ignored the court, or the court’s directive.” In re Smith, 926 So.2d 878, 887-88 (Miss. 2006) (citing Premeaux v. Smith, 569 So.2d 681, 684 (Miss. 1990)). This Court has held that “[djirect criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed ....” In re Smith, 926 So.2d at 888 (quoting In re Williamson, 838 So.2d 226, 237 (Miss. 2002)). “More specifically, direct criminal contempt ‘may consist of an open insult, in the presence of the court, to the person of the presiding justice, or a resistance to or defiance of power of the court.’” In re Smith, 926 So.2d at 888 (quoting Neely v. State, 98 Miss. 816, 54 So. 315, 316 (1911)). Further, direct criminal contempt has been defined as “ ‘[disorderly conduct in the court room, or the use of violence, or threatening, or insulting language to the court, witnesses or counsel ....’” Id. “A contempt which is direct, in the immediate presence of the court, may be summarily punished without affidavit, pleading or formal charges.” In re Smith, 926 So.2d at 888-89 (citing Varvaris v. State, 512 So.2d 886, 887-88 (Miss.1987)).
¶20. Spore argues that nothing he “said or did can be reasonably calculated to prevent the orderly administration of justice.” Spore continues that all he intended was to make a statement on the record in an effort to preserve an issue for appeal: “Mr. Spore was simply trying to make a *229 record for appellate review. Judge Weill deprived him of the right; and therefore denied Mr. Spore the right to zealously advocate for his client’s interest.” In response, the State contends that “Spore’s conduct during the hearing was a breach of courtroom decorum and was disruptive to the orderly administration of justice.” According to the State, Judge Weill allowed Spore ample time to make his argument and “Spore was attempting to argue that the trial court applied an incorrect standard, which Spore neglected to include in his argument.”
¶21. The Mississippi Rules of Professional Conduct state that “[a] lawyer shall not ... engage in conduct intended' to disrupt a tribunal.” Miss. R. Prof'l Conduct 3.5(d). The comment to the rule provides the following:
The advocate’s function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate’s right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge’s default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
Miss. R. Prof'l Conduct 3.5(d) cmt. Here, Spore’s post-ruling conduct provides what may be interpreted as an example of an advocate’s attempt to “protect the record for subsequent review ... by patient firmness” in the complete absence of “belligerence or theatrics” in a manner consistent with the letter and spirit of Rule 3.5 and its comment. Spore argues that he was merely engaging in zealous representation of his client by attempting to make a record for appellate review. Uniform Rule of Circuit and County Court Practice 3.02 provides that “[ajttorneys should manifest an attitude of professional respect toward the judge ....” URCCC 3.02. All of Spore’s efforts to speak to the court were couched in genteel and respectful verbiage in which he consistently addressed Judge Weill as “Your Honor.”
¶22. In the case of In re Smith, a lawyer made the following remark, inter alia, in open court to the judge: “ T believe that the actions of this Court have been so reprehensible as to disgust any court.’” In re Smith, 926 So.2d at 880 (emphasis in original). The lawyer then “refused to genuinely apologize, despite being given multiple opportunities by the court to do so.” Id. As a result, the trial judge found the lawyer in direct criminal contempt and had her jailed for five days. Id. This Court affirmed, holding that “the record unquestionably reveals, beyond a reasonable doubt, that Smith was, guilty of direct criminal contempt ....” Id. at 890.
¶23. In Mingo v. State, 944 So.2d 18, 32 (Miss. 2006), the defense lawyer sought to withdraw because of threats that had been made by unknown third persons against the defendant and his witnesses. When the trial court denied the motion, the defense lawyer refused to proceed with the trial. Id. at 33. The trial court then held the defense lawyer in direct criminal contempt. Id. This Court affirmed, finding that “[d]e-fense counsel’s refusal to continue with trial clearly constituted an action tending to prevent the orderly administration of justice” and that the “trial judge’s decision to hold counsel in direct criminal contempt, while serious, was within his discretion.” Id.
¶24. In the present case, Spore’s statements following Judge Weill’s imposition of Cowards’s sentence were responsive to that ruling: “[t]he Court made mention of *230 the fact that Mr. Cowards, on his five-year non-adjudicated sentence, original sentence, served I believe six months in the RID[7] Program, successfully completed the RID program.” Judge Weill reminded Spore that he had been given “ample opportunity” to make his argument and instructed him to “[p]lease sit down.” When Spore responded that he was “simply trying to make my record,” Judge Weill found him in direct criminal, contempt.
¶25. This case does not approach the degree of blatant disrespect shown by the lawyer’s comments in In re Smith, nor does it demonstrate anything close to the degree of obstruction shown by the lawyer’s refusal to continue with trial in Min-go. Furthermore, this Court routinely applies a procedural bar if the defendant’s lawyer failed to interpose a contemporaneous objection to a judicial ruling. Hall v. State, 201 So.3d 424, 428 (Miss. 2016) (“Hall has forfeited his right to argue these issues on appeal by failing to object contemporaneously below. Our rule is well-settled that a defendant’s failure to object bars that defendant from raising an issue on appeal.”); Cox v. State, 183 So.3d 36, 50 (Miss. 2015) (“Once at the sentencing, trial, defense counsel failed to renew any objections as to victim-impact testimony. Cox’s claim is, therefore, barred from consideration.”); Moffett v. State, 49 So.3d 1073, 1101 (Miss. 2010) (internal citation omitted) (“We will not hold a trial court ‘in error on appeal for a matter not presented to it for decision.’ ”). Spore’s timely effort to lodge a contemporaneous objection was stifled by the court.
¶26. The majority’s analogizing this case to Mississippi Bar v. Lumumba, in which this Court imposed discipline upon an attorney for blatant misconduct, is misplaced. Miss. Bar v. Lumumba, 912 So.2d 871, 889 (Miss. 2005). The lawyer in that case, appearing on behalf of a client in criminal post-trial motions before a circuit judge, said the following to the judge: ‘“Look, Judge, if we’ve got to pay for justice around here, I will pay for justice. I’ve paid other judges to try to get justice, pay you, too, if that’s what is necessary.’ ” Id. at 875. “[The court] cited [the lawyer] for contempt, fined him $500, and ordered him to serve three days in the Leake County Jail,” of which sentence the lawyer actually served one and one-half days. Id.
¶27. On appeal, the Mississippi Court of Appeals held that:
[The attorney’s] behavior was done in the presence of the court and intended to embarrass or prevent orderly administration of justice. Further, it was both disrespectful to the judge and disruptive to court proceedings. . We cannot fathom any situation that would warrant such behavior. This Court finds that the statements made toward the judge about how he can better get along with lawyers in the future, about the judge’s “henchmen,” about being proud to be thrown out of the courtroom, and about paying the judge for justice were made to embarrass the court or impede the administration of justice. This Court finds that the statements go far beyond zealous representation of one’s client, *231 and makes a mockery of the court and its proceedings.
Id. (quoting Lumumba v. State, 868 So.2d 1018, 1021 (Miss. Ct. App. 2003)), The situation described in Lumumba does not resemble the situation before this Court today in any respect. Spore was courteous and deferential in his attempt to preserve his client’s position for the record: ‘Tour Honor may I please make my record[?]”
¶28. We cannot discern Spore’s tone or manner of speaking, as Judge Weill was in a position to do. But the post-ruling comments do not appear from the cold record to have been calculated to prevent the orderly administration of justice. Spore appears not to have been presenting the same argument he had made prior to the ruling. Rather, the record reflects that Spore was attempting to advance a new argument that was responsive to the sentence the court had imposed, to which Spore seemed to be trying to interpose a contemporaneous and timely objection. Moreover, Judge Weill’s specific order to Spore was that he was not to present further argument “on the sentencing to be imposed.” (Emphasis added.) While the ruling relates to further argument about the anticipated sentence, temporally, Judge Weill’s words did not preclude Spore from presenting argument in response to the sentence once it had been imposed. Taken literally, the judge’s argument limitation applied to presentencing argument and not to postsentencing remarks by counsel.
¶29. The majority approves Judge Weill’s finding of contempt based on his having disallowed a lawyer to present argument in response to a sentence. This could authorize a trial court, under the guise of maintaining courtroom decorum, to preclude a lawyer from making a record-preserving contemporaneous objection to the sentence imposed. For example, if the sentence had been an illegal sentence, Spore would not have been able to make a contemporaneous objection without violating the court’s directive that the lawyer not speak after the pronouncement of sentence.
¶30. In Slaymaker v. State, 513 So.2d 921 (Miss. 1987), for instance, the circuit court imposed a five-year sentence and also suspended the defendant’s driving privileges for five years after the defendant was convicted of vehicular homicide. This Court affirmed the five-year sentence for vehicular homicide, but reversed and rendered the suspension of the defendant’s driving privileges because “[t]he suspension of driving privileges is the exclusive province of the Commissioner of Public Safety.” Id. at 922. The Court held that the circuit court “acted without statutory authority in suspending [the defendant’s] driving privileges for five years and imposed a sentence exceeding the maximum penalty provided by law.” Id. But for Slay-maker’s lawyer’s contemporaneous objection, the illegality of the suspension of driving privileges portion of the defendant’s sentence would not have been properly before this Court.
¶31. The majority—and the parties— agree that the order Spore is alleged to have violated is Judge Weill’s prohibition of further argument after the sentence was pronounced. But the transcript of the proceedings shows that, after a brief exchange, Judge Weill had asked Spore to “[pllease sit down.” Spore responded, ‘Tour Honor, I’m simply trying to make my record.” It was at that point that Judge Weill found Spore in direct criminal contempt. The record is far from clear with respect to precisely what “order” Spore is accused of violating. Was it Judge Weill’s instruction that no further argument would be heard after the sentence was handed down? Or was it Judge Weill’s *232 directive that Spore “[pjlease sit down”? The record does not inform this Court whether, or at what point, if any, Spore sat down as ordered. The contempt order, itself, provides no clarification. Spore was found in direct criminal contempt “due to his failure to abide by an order of the [c]ourt .,.. ” (Emphasis added.) This Court cannot, on ab initio review, find Spore guilty beyond a reasonable doubt of direct criminal contempt if we are unable to ascertain from the record what “order of the [e]ourt” he is accused of violating.
¶32. Moreover, while the Mississippi Rules of Professional Conduct govern the behavior of lawyers in court, the Code of Judicial Conduct imposes reciprocal requirements of patience and courtesy upon the judges of this State. Canon 3B(4) states that, “[j]udges shall be patient ... and courteous to ... lawyers ... with whom they deal in their official capacities .... ” Miss. Code of Judicial Conduct Canon 3B(4). The comment explains that “[t]he duty to hear all proceedings is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.” Miss. Code of Judicial Conduct Canon 3B(4) cmt. Further, Canon 3B(7) states that “[a] judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law.” Miss. Code of Judicial Conduct Canon 3B(7).
¶33. For these reasons, I respectfully decline to join the majority.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.

. Mississippi Code Section 47-5-110(4)(a) previously allowed the Mississippi Department of Corrections to “by rule or policy and procedure provide the regimented inmate discipline program [RID] and prerelease service for offenders at its major correctional facilities ....” Miss. Code Ann. § 47-5-110(4)(a) (2011). That language no longer appears in the 2015 revision. See Miss. Code Ann. § 47-5-110(4)(a) (Rev. 2015). Mississippi Code Section 47-5-110.2 (Rev. 2015) provides that "[f]rom and after January 1, 2017, no person to be sentenced to the custody of the Mississippi Department of Corrections shall be ordered to a Regimented Inmate Discipline (RID) program by any court’of this state.”