# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01670-SCT

*ALLEN M. RUSSELL a/k/a RUSSELL ALLEN*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2019 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | LINDSAY SLAWSON AREVALO |
| | BRYAN P. BUCKLEY |
| | JAMES LEWIS LANE, JR. |
| | DECARLO CHAS HOOD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/16/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. This certiorari case considers whether Allen Russell's life sentence without the possibility of parole for possession of marijuana, as an habitual offender under Mississippi Code Section 99-19-83 (Rev. 2020), violates his Eighth Amendment right to be free from cruel and unusual punishment. The Court of Appeals stalemated five to five, resulting in an

affirmance of the judgment of the trial court. ***Russell v. State***, No. 2019-KA-01670-COA, 2021 WL 1884144, at *3 (Miss. Ct. App. May 11, 2021). We affirm Russell's sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. As part of a criminal investigation, Hattiesburg Police Department officers went to the residence of a potential suspect, Allen Russell. Upon arrival, officers obtained a warrant to search the address for Russell and any other items related to the investigation.

¶3. Officers entered Russell's home and found him in the attic. Officers noticed a pair of jeans near Russell with his social security card, driver's license, and five small bags of marijuana in his pocket. At the scene, the five bags of marijuana weighed 79.5 grams (a little more than two and a half ounces). A later forensic analysis confirmed that the combined weight of two bags was 43.710 grams, but the remaining three bags were not evaluated because the statutory requirement to charge Russell with possession of marijuana had been satisfied.

¶4. Russell was indicted for one count of possessing more than 30 grams but less than 250 grams of marijuana. Miss. Code Ann. § 41-29-139(c)(2)(B)(1) (Rev. 2018). The indictment also charged Russell as a violent habitual offender under Mississippi Code Section 99-19-83 (Rev. 2020).

¶5. Russell moved to quash the indictment and argued that (1) the application of Section 99-19-83 violated his Constitutional right against ex post facto laws, and (2) a sentence of life without parole "egregiously violated" his Eighth Amendment protection against cruel and unusual punishment. The motion was brought forward for a hearing at arraignment. Russell

presented no witnesses or other evidence at the hearing, only argument. The State argued that Russell's motion to quash was premature and should be addressed at sentencing. The circuit court agreed and took the matter under advisement.

¶6. The jury convicted Russell of possession of marijuana in an amount greater than 30 grams but less than 250 grams.

¶7. At Russell's sentencing hearing, the trial court heard additional argument related to the motion to quash previously taken under advisement. Once again, Russell presented no witnesses or evidence, only argument. The court then specifically denied the motion to quash, although only mentioning the ex post facto claim in his oral ruling. Subsequently, the State presented evidence of Russell's prior felony convictions: two for burglary of a dwelling and one for felon in possession of a firearm. At this point, Russell was again given an opportunity to call witnesses but chose not to do so, nor did he present any other evidence. Based on Russell's prior felony convictions, the circuit court found that Russell was a violent habitual offender and sentenced him to life in prison without eligibility for probation or parole.

¶8. Thereafter, Russell unsuccessfully moved for a new trial, or alternatively, a judgment notwithstanding the verdict. Again, Russell challenged his sentence as cruel and unusual punishment under the Eighth Amendment. The court denied the motion. Russell appealed and argued that his "life sentence for possessing more than 30 grams but less than 250 grams of marijuana constitutes cruel and unusual punishment."

¶9. From a five to five evenly split court, Presiding Judge Carlton opined that Russell's

3

life sentence as an habitual offender was not grossly disproportionate to the crime committed for two reasons. *Russell*, 2021 WL 1884144 at *3. First, Judge Carlton found that "[a] sentence of life without parole is not grossly disproportionate to an habitual offender's crime of possession of a controlled substance." *Id.* at *2 (alteration in original) (internal quotation marks omitted) (quoting *Hudson v. State*, 31 So. 3d 1, at 4 (Miss. Ct. App. 2009), *rev'd on other grounds by Hudson v. State*, 30 So. 3d 1199, 1208 (Miss. 2010) (quoting *Wall v. State*, 718 So. 2d 1107 (Miss. 1998)). Second, Presiding Judge Carlton stated that Russell's sentence was within the prescribed statutory limit and, therefore, was not grossly disproportionate. *Id.* at *3.

¶10. Thereafter, this Court granted Russell's petition for a writ of certiorari. Russell does not ask to set aside his conviction. Rather, he seeks a lesser sentence. Russell maintains that this Court should vacate his sentence and remand for new sentencing so that the trial court may consider the Eighth Amendment in sentencing Russell for possession of marijuana.

## DISCUSSION

¶11. Russell was convicted of possession of marijuana in an amount greater than 30 grams but less than 250 grams under Section 41-29-139(c)(2)(B)(1). This section provides the punishment of "a fine of not more than Three Thousand Dollars ($3,000.00), or imprisonment in the custody of the Department of Corrections for not more than three (3) years, or both . . . ." Miss. Code Ann. § 41-29-139 (c)(2)(B)(1).

¶12. Russell's sentence was enhanced because he is a violent habitual offender under Section 99-19-83, which states:

4

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, . . . and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation[,] or any other form of early release from actual physical custody within the Department of Corrections.

Miss. Code Ann. § 99-19-83.

¶13.    Russell was considered a violent habitual offender because he pled guilty to two separate charges of burglary of a dwelling in 2004 and once to a charge of felon in possession of a firearm in 2015.  Russell served eight years, seven months and three days on his fifteen-year concurrent sentence for burglary of a dwelling.[1]  Russell participated in a Regimented Inmate Discipline Program, which led to his early release.  Russell was also sentenced to ten years as a felon in possession of a firearm, with two years to serve, eight years suspended, and five years of post-release supervision.  Appropriate evidence was presented to prove, beyond a reasonable doubt, that the requirements of Section 99-19-83 had been met.

¶14.    Because the trial judge followed the law to the letter, we affirm.

¶15.    The trial judge did not have sentencing discretion in this case. Mississippi Code Section 99-19-83 provided for one sentence: life without parole.  Miss. Code Ann. § 99-19-83 (Rev. 2020).  As is noted in ***Clowers v. State***, 522 So. 2d 762, 765 (Miss. 1988), however,

---

[1] In 2014, Russell's 2004 conviction for burglary of a dwelling became a per se crime of violence.  Miss. Code Ann. § 97-3-2(o) (Rev. 2014); ***Russell***, 2021 WL 1884144, at *3.

our discussion does not end there. As stated in *Clowers*:

> The fact that the trial judge lacks sentencing discretion does not necessarily mean the prescribed sentence meets federal constitutional proportionality requirements. Notwithstanding § 99-19-81, the trial court has authority to review a particular sentence in light of constitutional principles of proportionality as expressed in *Solem v. Helm*. That authority is a function of the Supremacy Clause. U.S. Const. Art. VI, cl. 2; *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965).

*Id.* at 765.

¶16. In *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), the United States Supreme Court held that a criminal sentence must not be disproportionate to the crime for which the defendant is being sentenced. The Court set out objective factors that should guide the proportionality analysis in each case: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.

¶17. "[T]o determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Nash v. State*, 293 So. 3d 265, 269 (Miss. 2020) (citing *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). As the *Nash* Court explained, "[o]nly in the exceedingly 'rare case in which this threshold comparison leads to an inference of gross disproportionality' should the court 'then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions.'" *Id.* (quoting *Graham*, 560 U.S. at 60).

6

¶18.   The Court of Appeals' separate opinion attempts to make a threshold comparison between Russell and Jerry Helm.  **Russell**, 2021 WL 1884144, at *4-8 (Wilson, P.J., dissenting).  The separate opinion  opined that "this case is not materially distinguishable from **Solem** based on the gravity of Russell's present offense, the extent or seriousness of his prior criminal history, the severity of the punishment he received, or any other material fact.  Accordingly, the result must also be the same." **Id.** at *6.  Further the separate opinion stated that "Russell's sentence under Section 99-19-83 is the equivalent of the sentence that the Court struck down in **Solem**" and "we are bound by **Solem** to vacate Russell's sentence." **Id.** at *7.  We respectfully disagree.

¶19.   The dissent joins Presiding Judge Wilson's separate opinion in finding "no material difference" between Russell and Helm.  I would first note that our law requires a specific analysis to determine if a particular sentence is grossly disproportionate as to a particular defendant.  **Nash**, 293 So. 2d at 269.  In other words, the argument that Russell has a lot in common with Helm not the standard.  **Russell**, 2021 WL 1884144, at *6 (Wilson, P.J., dissenting).  It is also not correct.  There are several material differences between Russell and Helm.

¶20.   In **Solem**, the Court specifically found that all of Helm's prior crimes were nonviolent.  **Solem**, 463 U.S. at 279.  It is undisputed, and not argued by Russell on appeal, that his two prior convictions for burglary of a dwelling are considered under Mississippi law to be crimes of violence.  While we do not know any facts regarding Helm's prior burglary convictions, we do know they were in the "3rd degree" which could have entailed either a

7

dwelling or non-dwelling. *Id.* We know that Russell's two prior burglaries were of dwellings.

¶21. We also know that alcohol was a contributing factor in each of Helm's prior convictions. *Id.* at 280. We further know that, due to alcohol, Helm had no recollection of committing the crime underlying Helm's habitual offender charge. *Id.* at 281. We know these things, of course, because there was evidence presented establishing them. *Id.* at 80-81. Russell presented no evidence, much less evidence that he suffered from some addiction or, otherwise, failed to appreciate the consequences of his actions.

¶22. Even if we are to assume, *arguendo*, that the threshold comparison leads to an inference of gross disproportionality in this case, Russell's claim still must fail. If an inference of gross disproportionality is found, the court must proceed to evaluate the remaining *Solem* factors in light of the evidence submitted by the defendant. *Nash*, 293 So. 3d at 269. This Court has ruled that the defendant has the burden of presenting evidence of each *Solem* factor in order for the court to determine whether the sentence is disproportionate. *Johnson v. State*, 29 So. 3d 738, 744 (Miss. 2010); *Willis v. State*, 911 So. 2d 947, 951 (Miss. 2005). Russell never presented evidence regarding any of the factors.[2]

¶23. Under our law, the defendant had the burden of establishing that he was entitled to a sentence other than life without parole, the mandatory sentence under Mississippi Code

---

[2] The record reflects that Russell made his argument in his motion to quash at a hearing before the trial court at arraignment. The motion was taken under advisement. Counsel was then allowed to present additional argument on the motion at the sentencing hearing. Further, at the sentencing hearing, Russell declined the opportunity to present witnesses and presented no additional evidence. After these opportunities, he additionally made the argument in his post-trial motion.

Section 99-19-83. Not only has Russell failed to meet that burden, he has not even attempted to do so.

¶24.    The bigger problem we face in these cases is the difficulty in determining what constitutes the initial inference of gross disproportionality, whether that threshold has been met and, procedurally, what to do when it has been met.

¶25.    As stated in *Matthews v. Cain*, 337 F. Supp. 3d 687, 700 (E.D. La. 2018),

> The first inquiry, i.e. whether the sentence in question is grossly disproportionate to the offense, is arguably the most difficult because "the Supreme Court has not established a process for making this threshold judgment, nor any substantive guideposts." Donna H. Lee, *Resuscitating Proportionality in Noncapital Criminal Sentencing*, 40 Ariz. St. L.J. 527, 529 (2008). Indeed, even the Supreme Court has acknowledged that "the precise contours" of the gross disproportionality principle are "unclear." *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *see also* [*Lockyer*, 538 U.S. at 72] ("Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality."). As a result, courts have "little concrete guidance, and the temptation simply to conclude there is no gross disproportionality is strong." *Lee*, *supra*, at 530.

¶26.    In analyzing this first prong, we have said that where sentences fall within the applicable statutory sentencing limits, we find no inference of gross disproportionality. *Mosley v. State*, 104 So. 3d 839, 841 (Miss. 2012); *see also Anderson v. State*, 293 So. 3d 279, 297 (Miss. Ct. App. 2019); *Mapp v. State*, 310 So. 3d 335, 338 (Miss. Ct. App. 2021). A sentence that exceeds the statutory limits could be an illegal sentence not necessitating a proportionality analysis. Such a holding is only applicable when, as in an habitual offender case under Mississippi Code Section 99-19-81, the maximum sentence would not exceed the maximum sentence for the *crime committed*.

¶27.    While certainly not the same as a death sentence, life without parole is, nevertheless,

9

different than other sentences.  As noted in *Graham*:

> It is true that a death sentence is "unique in its severity and irrevocability," *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); yet life without parole sentences share some characteristics with death sentences that are shared by no other sentences.  The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable.  It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence. *Solem*, 463 U.S. at 300-301, 103 S. Ct. 3001.  As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Naovarath v. State*, 105 Nev. 525, 526, 779 P. 2d 944 (1989).

*Graham*, 560 U.S. at 69-70.

¶28.   The decision in *Graham* dealt with juvenile offenders as opposed to adults.  It can certainly be argued that, at least to some degree, this differentiates it from other cases.  However, the analysis from *Graham* is persuasive, and the age of the defendant is a factor that can certainly be considered by the trial court when performing a proportionality analysis.

¶29.   A comparison limited to the crime for which Russell was convicted (possession of marijuana, a nonviolent crime carrying a maximum of three years in prison) compared to the mandatory sentence under Mississippi Code Section 99-19-83 (life in prison without parole) is grossly disproportionate.  Life without parole should be the exception, not the rule, for possession of less than 44 grams of marijuana. However, in Mississippi, we have indicated that the comparison includes "not only his current felony, but also his . . . history of felony recidivism." *Thomas v. State*, 48 So. 3d 460, 480 (Miss. 2010) (internal quotation mark

10

omitted) (quoting ***Ewing v. California***, 538 U.S. 11, 29, 123 S. Ct. 1179, 155 L. Ed. 2d 108

(2003)).

¶30.    Of course, the decision as to what constitutes a crime and what punishment is to be

received for those crimes is, subject to constitutional limitations, solely within the realm of

the legislature. ***Johnson v. State***, 950 So. 2d 178, 183 (Miss. 2007). Guidance from the

legislature would, of course, resolve the issue.[3] Any action in that regard remains the

legislature's prerogative.[4] However, the method by which a sentence is held up to an Eighth

Amendment analysis is a judicial function. Such analysis should be guided by specific

principles.

¶31.    That is the problem with ***Presley v. State***, 474 So. 2d 612 (Miss. 1985), and its

progeny. ***Presley*** advocated an *ad hoc* "I know it when I see it" approach. ***Id.*** at 620; *see*

***Jacobellis v. Ohio***, 378 U.S. 184, 197, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964) (Stewart, J.,

concurring)).  That is fine for some of the cases that have applied ***Presley***'s requirement for

a detailed sentencing hearing.  *See* ***Presley***, 474 So. 2d at 620 (stealing two steaks while

exhibiting a knife); ***Ashley v. State***, 538 So. 2d 1181 (Miss. 1980) (stealing two cans of

sardines and breaking into a house to try to get money to pay for them); ***Davis v. State***, 724

So. 2d 342 (Miss. 1998) (selling two rocks of crack cocaine within fifteen-hundred feet of

---

[3] We certainly agree with the dissent's analysis regarding trends towards the criminality of marijuana possession in this country.  These are trends that the legislature could, and should, take into account when determining the appropriate sentences for habitual offenders.

[4] As a matter of fact, the legislature has taken such action in Mississippi Code Section 99-19-81.

a church); *White v. State*, 742 So. 2d 1126 (Miss. 1999) (selling forty dollars worth of crack within fifteen-hundred feet of a church); *White v. State*, 761 So. 2d 221 (Miss. Ct. App. 2000) (selling forty dollars worth of crack within fifteen-hundred feet of a church). But how do we compare stealing two steaks to stealing sardines and breaking and entering to selling crack near a church to Russell's possession of forty-three grams of marijuana to the next case? Our trial judges deserve better guidance.

¶32. In the limited scenario in which the *mandatory* sentence facing a defendant *under* Section 99-19-83 is life without parole *and* the crime for which the defendant is being sentenced, unenhanced, is a nonviolent crime that carries a *minimal*-maximum sentence (i.e. less than ten years), trial judges should specifically consider "all matters relevant to" the sentence as contemplated in *Presley* to determine the issue of gross disproportionality and the constitutionality of the sentence as to that particular defendant. *Presley*, 474 So. 2d at 620. The trial judge would, of course, still make the ultimate determination as to the defendant's sentence under our prevailing law.[5] In such a situation, when the defendant has presented evidence regarding the *Solem* factors and the State has been given an opportunity to rebut the factors, the court should affirmatively address whether gross disproportionality has been shown.

¶33. None of this benefits Russell. We reiterate, once again, that the burden is upon the

---

[5] Chief Justice Randolph, in his separate opinion, embarks on a lengthy analysis of the history of enhanced sentences and proportionality. However, nothing in this opinion places any obligation on a trial judge to come to a different outcome regarding gross disproportionality or the ultimate propriety of the sentence. It merely holds that certain circumstances, such as a life without parole sentence for lesser felonies, deserve a closer look.

defendant to show that the sentence mandated by the legislature is unconstitutional as to that particular defendant. Because Russell presented no evidence, the only substantive evidence before the court were the prior convictions. If Russell had presented additional evidence, the State would have been given the opportunity to counter such proof (i.e., specifics regarding the instant crime, proof of other prior convictions, proof of additional criminal conduct, etc.).

¶34.    The record is replete with additional evidence, as documented in the separate opinion of the chief justice. We would refer the reader to the chief justice's separate opinion for a thorough recounting of the details surrounding Russell's arrest. However, it is pertinent to note that the arrest came while law enforcement was attempting to serve another drug related warrant on Russell as well as execute a search warrant on his premises. The search warrant came about as a result of Russell's being developed as a suspect in a murder in a hotel room where a medical document naming Russell was found. The hotel manager identified Russell on both a surveillance video and in a photo lineup. Chemical gas had to be deployed to obtain Russell's surrender. It is unlikely that Russell would have prevailed even if he had actually presented any evidence of his own. The dissent would give Russell another bite at the apple. However, to mix idioms, it is clear that is a can of worms Russell chose not to open.

¶35.    It is not the job of the trial judge to present evidence for either party. That burden is on the party wanting the evidence to be considered. Clearly, the trial judge was aware of Russell's history as contained in the record and, therefore, considered "all matters relevant to" the sentence that were placed before him. *Presley*, 474 So. 2d at 620.

13

## CONCLUSION

¶36. In Russell's case, the trial judge followed our procedure and the law, Russell presented no evidence related to the *Solem* factors and the trial judge sentenced Russell to the only sentence available. Therefore, we affirm.

¶37. **AFFIRMED.**

**MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM AND ISHEE, JJ.; MAXWELL AND CHAMBERLIN, JJ., JOIN IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ.**

**RANDOLPH, CHIEF JUSTICE, SPECIALLY CONCURRING:**

¶38. Because an evenly split Court of Appeals opinion resulted in an affirmance of the judgment of the trial court, we granted Russell's petition for certiorari.[6] He argued before the Court of Appeals that *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), required vacation of his sentence, framing the issue as whether his "life sentence for possessing more than 30 grams but less than 250 grams of marijuana constitutes cruel and unusual punishment," despite recognizing that his "prior convictions are relevant to the sentencing decision." *Solem*, 463 U.S. at 296, n.21.[7] An attempt to frame the issue in this manner was rejected by the United States Supreme Court in *Ewing v. California*, 538 U.S. 11, 29, 123 S. Ct. 1179, 1189, 155 L. Ed. 2d 108 (2003). When sentencing Russell, the trial judge properly "place[d] on the scales not only his current felony, but also his long history

---

[6] *See* **Beecham v. State**, 108 So. 3d 394 (Miss. 2012); **Rockett Steel Works v. McIntyre**, 15 So. 2d 624 (Miss. 1943).

[7] **Solem** does not require consideration of prior convictions. **Solem**, 463 U.S. at 292.

14

of felony recidivism." *Id.* Five of the ten judges on the Court of Appeals would have vacated Russell's sentence, primarily relying on Russell's argument that *Solem* is the only controlling case, despite contrary principles set forth in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct 1166, 155 L. Ed. 2d 144 (2003), and *Ewing*, 538 U.S. 11. Thus, I am constrained to write separately.

¶39. I agree with the majority that the trial judge committed no error. The decision of the learned trial judge is correct both procedurally and substantively. His ruling did not run afoul of any Mississippi case law, any United States Supreme Court precedent, or the sentencing statute. The trial record contains not one iota of evidence to trigger a proportionality analysis. This is not an extraordinary nor exceedingly rare case as discussed in *Hutto v. Davis*, 454 U.S. 370, 374, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982); *Harmelin*, 501 U.S. at 1001 or *Ewing*, 538 U.S. at 22. I write separately to address a series of cases of the United States Supreme Court, that establish principles and identify *Solem*'s weaknesses. The determination of gross disproportionality is guided by these principles.[8]

**Russell's Criminal History**

¶40. Russell is no stranger to the criminal justice system. At his sentencing hearing, the

___

[8]*Solem* has been described by some as an outlier. *Graham v. Florida*, 560 U.S. 48, 104 n.2, 130 S. Ct. 2011, 176 L. Ed. 2d. 825 (2010) (Thomas, J., dissenting) (citing Rachel E. Barkow, *The Court of Life and Death: The Two Tracks of Constitutional Sentencing Law and the Case for Uniformity*, 107 Mich. L. Rev. 1145, 1160 (2009) ("Solem now stands as an outlier"); Daniel Suleiman, *The Capital Punishment Exception: A Case for Constitutionalizing the Substantive Criminal Law*, 104 Colum. L. Rev. 426, 445 (2004) (observing that outside of the capital context, "proportionality review has been virtually dormant")).

15

trial court considered the Certificate of Records provided by the Mississippi Department of Corrections (MDOC), which reveals an extensive criminal history, including numerous encounters over a sixteen-year period with the courts and criminal justice system of the state of Mississippi. These records reveal a felony committed on June 21, 2003, and another felony committed two days later. Russell pled guilty to both. On May 3, 2004, Russell was sentenced to serve fifteen years for each count, but the trial court set the sentences to run concurrently, reducing the length of his incarceration by one half. Russell caught his first break. Soon thereafter, he caught another break. He was permitted to avoid that length of incarceration by participating in the Regimented Inmate Discipline (RID) Program. He also was ordered to pay restitution of $675 to Andrea Russell of Sumrall, $400 to Renaldo Willis of Columbia, and all costs of court. A December 29, 2004 order reads that Russell completed the RID program. An amended order of conviction was entered. That order not only reduced Russell's sentence, but he was released from custody and was placed on probation for five years. Russell had caught yet another break, released to a free and open society.

¶41. Before six months had passed, Russell was before the bench again. His probation was revoked. He was not incarcerated for that violation, but rather he was placed on house arrest beginning June 21, 2005, for three years, with five years post-release supervision for each prior count, again to run concurrently. He had caught yet another break and avoided incarceration. Less than two weeks later, Russell violated the house arrest condition (ironically, on Independence Day). He was picked up and was returned to custody on July 5, 2005, to serve out his original sentences. Before completing the original sentence, the State

16

Parole Board granted Russell parole, years before the expiration of the scheduled conclusion of the original concurrent sentences. Russell had caught another break. He was released on February 7, 2014.

¶42. Sixteen months later, Russell was arrested again. This time was for possession of a firearm by a convicted felon. Appearing before Circuit Judge Helfrich (the same judge who presided over the case sub judice), Russell pled guilty. Judge Helfrich sentenced him to a term of ten years, but only required him to serve two of those years, suspending the remaining eight provided he conformed to the post-release-supervision guidelines for five years.[9] He received this break from the same circuit judge who sentenced him to a term less than the maximum sentence allowed. Russell served less than one year before he was released on parole again on March 29, 2016, yet another break. But then Russell violated the conditions of his parole, and he was returned to the MDOC on May 11, 2016. There he remained incarcerated until his release on probation on September 30, 2016, a year before that full sentence was served, yet another break.

¶43. Russell's most recent run in with the courts and the MDOC began on November 29, 2017, when he was arrested for the possession of marijuana with the intent to transfer or distribute. The night Russell was arrested, a search warrant had been issued for Russell and his apartment as part of an ongoing homicide investigation. In the early morning hours of November 29, 2017, Hattiesburg police officers responded to a report that a deceased body was at the Deluxe Inn. An occupant informed police that he had observed a "male slumped

---

[9] One of those conditions was not possessing any alcohol, **drugs**, or firearms.

backwards in a chair . . . bleeding from his head" inside the room next to his. Upon arrival, the officers found a body with what appeared to be multiple gunshot wounds to the head. The officers recovered video surveillance of a male at the scene. They also recovered from the victim's hotel room a medical statement addressed to Russell. Russell was identified by the manager in a photographic line-up as the man in the surveillance footage from the Deluxe Inn.

¶44. Following those leads, the officers went to the address on the medical statement. The occupant refused to come to the door. The house was placed under surveillance, and a search warrant was procured. After the search warrant was obtained, entry was denied. The officers then breached the windows of the apartment and later deployed a flash bang to the apartment's front door. Still, the occupant did not respond. The officers entered the apartment. They did not see Russell but observed a stool under an attic crawl space entry. Gas canisters were released into the attic to force Russell to exit his hiding space. From the apartment, the police officers recovered a hat, jacket, pair of pants, cell phone, pair of shoes, DNA, and gunshot residue from Russell. Additionally, five bags of marijuana were found in Russell's pants pocket. Russell was indicted for possession of marijuana as an habitual offender.

¶45. A jury found Russell guilty of possession of more than thirty grams but less than 250 grams of marijuana. The State established his habitual offender status by presenting a penpack and a correction officer's testimony during sentencing, along with certified conviction records. No objection or additional evidence, mitigating or otherwise, was

presented by Russell.  Russell never advanced such a plea following the trial court's ruling

that he would be sentenced as an habitual offender under Mississippi Code Section 99-19-83

(Rev. 2020) at that time. In its sentencing order, the trial court found that:

> at Sentencing, the State presented evidence of [Russell's] prior criminal convictions and the amount of time served in prison on each through the testimony of Mississippi Department of Corrections Probation and Parole Officer, Markeisha Barber and through introduction of Sentencing Exhibit 1, a certified pen pack for [Russell] and two certified convictions of [Russell] from Marion County Circuit Court as Sentencing Exhibits 2 and 3. The Defendant did not put forth any evidence at Sentencing. After a thorough review of Sentencing Exhibits 1, 2, and 3, the Court found the evidence presented by the State proved beyond a reasonable doubt, that [Russell] had been convicted at least twice previously of felonies upon charges separately brought and arising out of separate incidents at different times and was sentenced to and served separate terms of imprisonment of one (1) year or more on each such convictions, regardless of whether served concurrently or not, and that one of such felonies was a crime of violence, as defined by Miss. Code Ann.§ 97-3-2 (1972).

The trial court sentenced Russell to a term of life imprisonment without the possibility of

parole pursuant to Section 99-19-83.

## DISCUSSION

¶46.    The majority correctly holds that Russell failed to carry the burden of establishing that

he was entitled to a sentence less than life without parole. In addition, Russell failed to

overcome the substantive bars to vacate his sentence. When one examines the full body of

law, federal and state, no inference should be entertained that a gross disproportionality

review should have been considered, much less granted. *Solem* is neither the first nor last

Supreme Court ruling on proportionality. Additionally, *Solem*  has a multitude of material

distinctions as identified by Justice Chamberlin. *See* Maj. Op. ¶¶ 19-21.

19

¶47. Section 99-19-83 addresses habitual offenders. Habitual offenders are previously convicted criminals (recidivists) who commit new crimes. The record sub judice evinces Russell's propensities to repeatedly backslide. Despite serving ten years of incarceration for three separate felonies, Russell was still not deterred from committing new crimes. Russell has spurned efforts to rehabilitate. I discern no abuse of discretion in the trial court's finding that Russell was a violent habitual offender. The record reveals no factual or legal basis for conducting a proportionality review. All attempts by the State to deter further criminal acts were ineffectual. Neither concurrent sentences, participation in RID, restitution, probation, post-release supervision, house arrest, parole, suspended sentences, nor reduced sentences have persuaded Russell to obey the law.[10] The Legislature has determined that society must be protected from persons like Russell. The legislative goal is achieved by isolation. *See Rummel*, 445 U.S. at 284. Life sentences without parole for habitual offenders have been affirmed by this Court time and time again.

¶48. Russell's sentence is within the statutory guidelines prescribed by the Legislature. The Legislature is the department or branch of our government responsible for prescribing sentences. Miss. Const. art. 1, § 1. Section 99-19-83 was enacted by the Legislature. The trial court applied that law without error. "This Court has held that sentencing is within the discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute." *Tate v. State*, 912 So. 2d 919, 933 (Miss. 2005) (citing *Nichols v. State*, 826 So. 2d 1288, 1290 (Miss. 2002)). Which begs the question—why would Russell

_____

[10]This fact further distinguishes Russell's case from *Solem*.

20

be entitled to a review? In ***Stromas v. State***, 618 So. 2d 116, 123-24 (Miss. 1993) (quoting

***Barnwell v. State***, 567 So. 2d 215, 222 (Miss. 1990)), this Court held:

> [t]hough no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and trial court in this area and has repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.

"Congress has the power to define criminal punishments without giving the courts any sentencing discretion." ***Chapman v. United States***, 500 U.S. 453, 467, 111 S. Ct. 1919, 1928, 114 L. Ed. 2d 524 (1991) (citing ***Ex parte United States***, 242 U.S. 27, 37 S. Ct. 72, 61 L. Ed. 129 (1916)).

¶49.   Russell has received a harsh punishment **not** because he possessed a small amount of marijuana, but because he has repeatedly refused to abide by the laws enacted to protect all the citizens of our state. Russell was lawfully sentenced under Section 99-19-83.

¶50.   A gross-disproportionality analysis is not confined to the factors found in ***Solem v. Helm***, 463 U.S. 277. ***Solem*** has been criticized and subsequently was circumscribed by the United States Supreme Court. Unquestionably, courts have the authority to ensure that a defendant's constitutional rights under the Eighth Amendment of the United States Constitution and article 8, section 32, of the Mississippi Constitution are protected. Thus, it is imperative that the bar and bench of our state should be familiar with cases which address the issue. Trial courts should consider those principles, with all facts relevant and material to each individual defendant before deciding if a gross-disproportionality review is warranted.

21

### 1. Federal Jurisprudence

¶51. The Supreme Court first addressed this issue in ***Rummel***, 445 U.S. 263. None of Rummel's prior convictions were violent. Rummel was first indicted for the "fraudulent use of a credit card to obtain $80 worth of goods or services." ***Rummel***, 445 U.S. at 265. He subsequently pled guilty and was sentenced to three years. ***Id.*** Five years later, Rummel was charged with "passing a forged check in the amount of $28.36." ***Id.*** He pled guilty and was sentenced to four years. ***Id.*** at 266. Rummel's third crime was "obtaining $120.75 by false pretenses." ***Id.*** The State proceeded to charge Rummel under the Texas recidivist statute. ***Id.*** He was convicted and sentenced to a term of life imprisonment. ***Id.*** His sentence was upheld by Texas's appellate courts and the United States District Court for the Western District of Texas. ***Id.*** at 267. Initially the judgment of the district court was reversed by a divided panel of the United States Court of Appeals for the Fifth Circuit. ***Id.*** However, the Fifth Circuit, sitting en banc, affirmed the judgment of the district court and the sentence imposed by the state court. ***Id.*** at 267-68.

¶52. The United States Supreme Court granted certiorari. Its opinion noted that Rummel was not challenging the constitutionality of the Texas recidivist statute nor was he challenging Texas's "authority to punish each of his offenses as felonies[.]" ***Id.*** at 268. Russell, in today's case, like Rummel then, does not challenge the constitutionality of Section 99-19-83, but rather the application of a valid statute. Rummel only challenged "the State's authority to impose a sentence of life imprisonment, as opposed to a substantial term of years, for his third felony." ***Id.*** at 270-71. Like today's case, Rummel's triggering crime was a

22

nonviolent felony.

¶53. The United States Supreme Court held that the purpose of a recidivist statute is to deal "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Id.* at 276. It further held:

> [t]he purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and *its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.* Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Id.* at 284-85 (emphasis added). The Supreme Court affirmed Rummel's sentence, imposed by the punishing jurisdiction, Texas, finding that the mandatory life sentence imposed was not cruel or unusual. *Id.* at 285.

¶54. In *Solem*, the Supreme Court was presented with another career criminal who was sentenced to life imprisonment without the possibility of parole for a seventh nonviolent felony. 463 U.S. at 279. His triggering conviction was uttering a "no account" check for $100, which, standing alone, carried a sentence of five years imprisonment and a $5,000 fine. *Id.* at 281. Under South Dakota's recidivist statute, Helm was sentenced to life imprisonment. *Id.*

¶55. Helm sought relief from the United States District Court for the District of South

23

Dakota, arguing that his sentence constituted cruel and unusual punishment. *Id.* at 283.

"Although the District Court recognized that the sentence was harsh, it concluded that [the United States Supreme] Court's recent decision in ***Rummel v. Estelle***, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), was dispositive. It therefore denied the writ." ***Solem***, 463 U.S. at 283. The United States Court of Appeals for the Eighth Circuit had reversed, finding that ***Rummel*** was distinguishable.[11] ***Solem***, 463 U.S. at 283. The Eighth Circuit had determined "that Helm's sentence was grossly disproportionate to the nature of the offense." *Id.* (quoting ***Helm v. Solem***, 684 F.2d 582, 587 (8th Cir. 1982), *aff'd*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). The Supreme Court granted certiorari. ***Solem***, 463 U.S. at 283. It affirmed the Eighth Circuit, but cautioned in its holding that:

> as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.

*Id.* at 290.

¶56.    ***Solem*** listed criteria that sentencing courts may consider once asked[12] to review sentences under the Eighth Amendment.

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same

---

[11] South Dakota had a commutation system, which is fundamentally different than Texas's parole system. *Id.* at 300.

[12] Russell failed to request such a review.

crime in other jurisdictions.

. . . .

This list is by no means exhaustive. It simply illustrates that there are generally accepted criteria for comparing the severity of different crimes on a broad scale, despite the difficulties courts face in attempting to draw distinctions between similar crimes.

*Id.* at 292, 294. The Supreme Court recognized that Helm was sentenced as a habitual offender, "[a]nd a State is justified in punishing a recidivist more severely than it punishes a first offender." *Id.* at 296. The Supreme Court acknowledged that Helm's habitual status complicated its analysis because the statute under which he was sentenced "authorized life imprisonment after three prior convictions, regardless of the crimes." *Id.* at 298. Nonetheless, the Supreme Court affirmed the decision of the Eighth Circuit. Of all of the United States Supreme Court cases that addressed today's issue, *Solem* stands alone as the only case to require resentencing.

¶57.    Only eight years after *Solem*, in *Harmelin v. Michigan*, 501 U.S. 957, a plurality opinion, the Supreme Court addressed a mandatory sentence of life in prison without the possibility of parole for a defendant who had no prior felony convictions. Harmelin was convicted of possessing cocaine. *Id.* at 961. The Michigan Court of Appeals, on a petition for rehearing, affirmed his conviction and sentence, finding the sentence was not cruel or unusual. *Id.* On certiorari, Harmelin argued his sentence was unconstitutional because it was disproportionate to his crime and of a mandatory nature, not accounting for the surrounding circumstances, specifically that he had no prior felony convictions. *Id.* at 961-62. The Supreme Court rejected Harmelin's argument. "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms

25

throughout our Nation's history. . . . There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Id.* at 994-95 (citing *Chapman*, 500 U.S. at 467).

¶58.    In a separate opinion, Justice Kennedy, joined by two other justices, encouraged modification of the criteria identified in *Solem*, writing that the second and third criteria need not be considered if an inference of gross disproportionality was not first met. *Id.* at 1005 (Kennedy, J., concurring in part and concurring in the judgment). Justice Kennedy identified the principles which guide a proportionality analysis: legislative primacy, penological pluralism, federalism, objective factors, and gross disproportionality. *Id.* at 998-1001. Because "a comparison of [Harmelin's] crime with his sentence d[id] not give rise to an inference of gross disproportionality," a further analysis of the second and third factors was not required. *Harmelin*, 501 U.S. at 1005.

¶59.    Twelve years later, in *Lockyer*, 538 U.S. 63, the United States Supreme Court was called upon to address California's three-strikes law. Andrade was arrested on two separate occasions two weeks apart for shoplifting. *Id.* at 66. Andrade first stole five videotapes worth $84.70, and on the second occurrence, he lifted four more videotapes worth $68.84. *Id.* Prior to those arrests and multiple misdemeanor arrests, Andrade pled guilty to three counts of first-degree residential burglary and was sentenced to ten years in prison. *Id.* He was later convicted of the transportation of marijuana and was sentenced to eight years in federal prison. *Id.* Andrade was convicted again of the transportation of marijuana and was sentenced to six years in federal prison. *Id.* at 67.

26

¶60.    Pursuant to California statutory law, Andrade was charged with two counts of petty theft with a prior conviction, punishable as felonies. *Id.* Under California's three-strikes law, each felony could subject Andrade to a term of twenty-five years to life. *Id.* The jury found Andrade guilty of two counts of petty theft with a prior conviction. *Id.* at 68. The California Court of Appeals affirmed Andrade's sentence, finding it was not disproportionate in light of his previous three felonies. *Id.* at 68-69. The United States District Court for the Central District of California denied Andrade's petition for habeas review, but the United States Court of Appeals for the Ninth Circuit reversed the judgment of the District Court. *Id.* at 69. The United States Supreme Court granted certiorari. *Id.* at 70.

¶61.    The United States Supreme Court acknowledged its failure to clarify the principles for a gross disproportionality analysis in both *Solem* and *Harmelin*. *Andrade*, 538 U.S. at 71.

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. In *Solem* (the case upon which Andrade relies most heavily), we stated: "It is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." 463 U.S., at 294, 103 S. Ct. 3001 (footnote omitted). And in *Harmelin*, both Justice Kennedy and Justice Scalia repeatedly emphasized this lack of clarity: that "*Solem was scarcely the expression of clear . . . constitutional law*," 501 U.S., at 965, 111 S. Ct. 2680 (opinion of Scalia, J.), that in "adher[ing] to the narrow proportionality principle . . . our proportionality decisions have not been clear or consistent in all respects," *id.*, at 996, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment), that "we lack clear objective standards to distinguish between sentences for different terms of years," *id.*, at 1001, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment), and that the "precise contours" of the proportionality principle "are unclear," *id.*, at 998, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment).

Thus, in this case, the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme" case. *Id.*, at 1001, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see also *Solem v. Helm*, *supra*, at 290, 103 S. Ct. 3001; *Rummel v. Estelle*, 445 U.S., at 272, 100 S. Ct. 1133.

*Andrade*, 538 U.S. at 72-73 (alterations in original).

¶62.    The Supreme Court held that the Ninth Circuit erred when it reversed the sentence affirmed by the California Court of Appeals. *Id.* at 73. It then established parameters for state court decisions:

First, a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, [529 U.S. 362,] 405-406, 120 S. Ct. 1495, [146 L. Ed. 2d. 389 (200)]; *see also Bell v. Cone*, [535 U.S. 685,] 694, 122 S. Ct. 1843, [152 L. Ed. 2d. 914 (2002)].[13] In terms of length of sentence and availability of parole, severity of the underlying offense, and the impact of recidivism, Andrade's sentence implicates factors relevant in both *Rummel* and *Solem*. Because *Harmelin* and *Solem* specifically stated that they did not overrule *Rummel*, it was not contrary to our clearly established law for the California Court of Appeal to turn to *Rummel* in deciding whether a sentence is grossly disproportionate. *See Harmelin*, [501 U.S.] at 998, 111 S. Ct. 2680 (KENNEDY, J., concurring in part and concurring in judgment); *Solem*,[463 U.S.] at 288, n. 13, 303-304, n. 32, 103 S. Ct. 3001. *Indeed, Harmelin allows a state court to reasonably rely on Rummel in determining whether a sentence is grossly disproportionate.* The California Court of Appeal's decision was therefore not "contrary to" the governing legal principles set forth in our cases.

*Andrade*, 538 U.S. at 73-74 (emphasis added). While the following discussion addresses federal habeas review, the United States Supreme Court's admonition to the Ninth Circuit

---

[13] Russell's case does neither.

28

contains worthy instructions of caution:

> It is not enough that a federal habeas court, in its "independent review of the legal question," is left with a "'firm conviction'" that the state court was "'erroneous.'" [***Andrade v. Att'y Gen. of State of California***, 270 F.3d 743, 753 (9th Cir. 2001), *rev'd sub nom.* ***Lockyer v. Andrade***, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)] (quoting ***Van Tran v. Lindsey***, [212 F.3d 1143, 1153-54 (9th Cir. 2000))]. We have held precisely the opposite: "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." ***Williams v. Taylor***, 529 U.S. at 411, 120 S. Ct. 1495. Rather, that application must be objectively unreasonable. ***Id.*** at 409, 120 S. Ct. 1495; ***Bell v. Cone***, *supra*, at 699, 122 S. Ct. 1843; ***Woodford v. Visciotti***, 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*).
>
> Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced. *See, e.g.*, ***Williams v. Taylor***, *supra*, at 407, 120 S. Ct. 1495 (noting that it is "an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). Here, however, *the governing legal principle gives **legislatures** broad discretion to fashion a sentence that fits within the scope of the proportionality principle-the "precise contours" of which "are unclear."* ***Harmelin v. Michigan***, 501 U.S., at 998, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment). And it was not objectively unreasonable for the California Court of Appeal to conclude that these "contours" permitted an affirmance of Andrade's sentence.
> . . . .
>
> The gross disproportionality principle reserves a constitutional violation for only the extraordinary case. In applying this principle for § 2254(d)(1) purposes, it was not an unreasonable application of our clearly established law for the California Court of Appeal to affirm Andrade's sentence of two consecutive terms of 25 years to life in prison.

*Andrade*, 538 U.S. at 75-77 (emphasis added).

¶63.    On the same day ***Andrade*** was released, the Supreme Court also handed down ***Ewing***,

538 U.S. at 14, which again addressed California's "Three Strikes and You're Out" law[14] as applied to a repeat felon sentenced to a term of twenty-five years to life. While on parole from a nine-year prison term, Ewing stole approximately $1200 worth of golf clubs. ***Ewing***, 538 U.S. at 18. Ewing, like Russell, was no stranger to the criminal justice system with a long criminal history. Ten months after being paroled, he committed the triggering offense. ***Id.*** at 19. Because the trial court found Ewing previously had been convicted of four violent felonies, Ewing was sentenced under the three-strikes law to twenty-five years to life. ***Id.*** at 20. Relying on ***Rummel***, the California Court of Appeals "rejected Ewing's claim that his sentence was grossly disproportionate under the Eighth Amendment" and found that California's three-strikes law "serve[d] the 'legitimate goal' of deterring and incapacitating

---

[14] California's three strikes law reflects a shift in the State's sentencing policies toward incapacitating and deterring repeat offenders who threaten the public safety. The law was designed "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." Cal. Penal Code Ann. § 667(b) (1999).

. . . .

California thus became the second State to enact a three strikes law. In November 1993, the voters of Washington State approved their own three strikes law . . . . U.S. Dept. of Justice, National Institute of Justice, J. Clark, J. Austin, & D. Henry, "Three Strikes and You're Out": A Review of State Legislation 1 (Sept. 1997) (hereinafter Review of State Legislation). Between 1993 and 1995, 24 States and the Federal Government enacted three strikes laws. Ibid. Though the three strikes laws vary from State to State, they share a common goal of protecting the public safety by providing lengthy prison terms for habitual felons.

***Ewing***, 538 U.S. at 14-15.

30

repeat offenders." *Id.* The Supreme Court affirmed Ewing's sentence. *Id.*

¶64.    In its analysis, the Supreme Court walked through the history of proportionality cases. The Court reiterated that "successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 22 (internal quotation mark omitted) (quoting *Hutto v. Davis*, 454 U.S. 370, 374, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982)). Justice O' Connor adopted the principles enunciated in Justice Kennedy's concurrence in *Harmelin*. She wrote that

> He then identified four principles of proportionality review-"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"-that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id., at 1001, 111 S.Ct. 2680 (citing *Solem*, supra, at 288, 103 S.Ct. 3001). Justice KENNEDY's concurrence also stated that Solem "did not mandate" comparative analysis "within and between jurisdictions." 501 U.S., at 1004-1005, 111 S.Ct. 2680.

*Ewing*, 538 U.S. at 23. Justice O' Connor concluded that those principles of proportionality review should now "guide our application of the Eighth Amendment." *Id.* at 22-24.

¶65.    The Supreme Court again deferred to state legislatures "in making and implementing such important policy decisions[.]" *Id.* at 24.  Justice O' Connor further wrote that:

> our cases establish that "States have a valid interest in deterring and segregating habitual criminals." *Parke v. Raley*, 506 U.S. 20, 27, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992); *Oyler v. Boles*, 368 U.S. 448, 451, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962) ("[T]he constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge."). Recidivism has long been recognized as a legitimate basis for increased punishment. See *Almendarez-Torres v. United States*, 523 U.S. 224, 230, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (recidivism "is as typical a sentencing factor as one might imagine"); *Witte v. United States*, 515

U.S. 389, 400, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense . . . [is] '*a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.*'" (quoting **Gryger v. Burke**, 334 U.S. 728, 732, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948))).

*Ewing*, 538 U.S. at 25-26 (alterations in original) (emphasis added).

¶66.    After its examination of its prior cases, the state of the law, and its deference to state legislatures, the Supreme Court affirmed Ewing's sentence. *Id.* at 30-31. First, when comparing the gravity of the offense to the harshness of the penalty, Court found that

> [t]he gravity of his offense was not merely "shoplifting three golf clubs." Rather, Ewing was convicted of felony grand theft for stealing nearly $1,200 worth of merchandise **after previously having been convicted** of at least two "violent" or "serious" felonies.
>
> . . . .
>
> *In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism.* Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the "triggering" offense: "[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." **Rummel**, 445 U.S., at 276, 100 S. Ct. 1133; **Solem**, *supra*, at 296, 103 S. Ct. 3001. To give full effect to the State's choice of this legitimate penological goal, our proportionality review of Ewing's sentence must take that goal into account.

*Ewing*, 538 U.S. at 28-29 (alteration in original) (emphasis added). The Supreme Court found that

> Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record. . . .*To be sure, Ewing's sentence is a long one.*

32

*But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated.* The State of California "was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." ***Rummel***, *supra*, at 284, 100 S. Ct. 1133. Ewing's is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." ***Harmelin***, 501 U.S. at 1005, 111 S. Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment).

***Ewing***, 538 U.S. at 29-30 (alteration in original) (emphasis added) (footnote omitted). The Court held that Ewing's sentence did not violate the Eighth Amendment. ***Id.*** at 30-31.

## 2. Mississippi Jurisprudence

¶67. We have repeatedly held that the decision as to what constitutes a crime and what punishment is to be received for those crimes is solely within the realm of the Legislature. ***Jones v. State***, 122 So. 3d 698, 702 (Miss. 2013) ("The Legislature is the branch of government responsible for enactment of substantive law, which includes both crime and punishment."); ***Brawner v. State***, 947 So. 2d 254, 268 (Miss. 2006) ("It is the Legislature's prerogative to define crimes and set punishments as long as they remain within the limits of the United States Constitution and our own." (citing ***Stevens v. State***, 806 So. 2d 1031, 1044 (Miss. 2001))); ***Weaver v. State***, 713 So. 2d 860, 863 (Miss. 1997) ("[T]he Legislature has the exclusive constitutional power to define what is a crime and what type of punishment is to be assessed." (citing ***Winters v. State***, 473 So. 2d 452, 456 (Miss. 1985), *superseded by statute as stated in* ***Henderson v. State***, 323 So. 3d 1020 (Miss. 2021)); ***Horton v. State***, 374 So. 2d 764, 765 (Miss. 1979) ("Fixing the limits of punishment for crime is a function of the legislature, and unless the punishment specified by statute constitutes cruel and unusual

punishment, it will not be disturbed by the judiciary."); ***Gabriel v. Brame***, 200 Miss. 767, 773, 28 So. 2d 581, 583 (1947) ("[T]he authority to say what constitutes a crime, and what punishment shall be inflicted, is in its entirety a legislative question, save as to punishment which is cruel and inhuman, and being so, the law-making authority may prescribe not only the penalty but also such incidents and conditions as will in the judgment of the legislature best serve the general policy which is the basis of all criminal sentences.").

¶68.    This Court has affirmed enhanced sentences for habitual offenders repeatedly in case after case for more than four decades. In ***Baker v. State***, 394 So. 2d 1376, 1377 (Miss. 1981), Baker was convicted of carrying a concealed weapon as a felon and was sentenced to life imprisonment without probation or parole. Baker appealed, arguing that Section 99-19-83 was unconstitutional as written and applied, *inter alia*. ***Id.*** Baker argued that the Court failed to follow ***Rummel***, 445 U.S. 263, because he was denied probation or parole. ***Id.*** at 1378. This Court held that the option of parole was "a question of state policy exclusively for the state's decision." ***Id.*** (citing ***Ughbanks v. Armstrong***, 208 U.S. 481, 28 S. Ct. 372, 52 L. Ed. 582 (1908)).We further held that it was the responsibility of the Legislature to determine proper punishments:

> It is a matter within the legislative prerogative which is not a proper subject of judicial interferences. Society is entitled to protection against criminals who habitually wreak unlawful aggression against the lives and property of the law abiding citizens of the state. When a convicted felon has demonstrated incorrigibility to the ordinary modes of punishment, it becomes necessary to seek other means to deter his criminal propensities, and such may be done by the legislature even to the extent of depriving him permanently of his liberty.

***Id.*** (citations omitted).  The Court specifically held that Section 99-19-83 was constitutional

34

as written and applied. *Id.* at 1379. Baker's conviction and sentence was affirmed because "[t]he State sufficiently proved the prior convictions, [such] that we are of the opinion the enhancement of Baker's punishment under [Section] 99-19-83 was based upon ample evidence." *Id.*

¶69.   We have repeatedly held that Section 99-19-83 is neither unconstitutional nor cruel and unusual. In *Jackson v. State*, 483 So. 2d 1353, 1355 (Miss. 1986), Jackson sought refuge via *Solem*, 463 U.S. 277, and argued that his sentence of life imprisonment without parole was disproportionate to his charged offence. This Court explicitly rejected the disproportionality argument and held that reliance on *Solem* was misplaced. *Jackson*, 483 So. 2d at 1355. This Court held Jackson's sentence under Section 99-19-83 was not cruel nor unusual. *Id.*

¶70.   In *Thomas v. State*, 48 So. 3d 460 (Miss. 2010), Thomas was convicted of fourth-degree arson and was sentenced as a habitual offender, under Section 99-19-83, to life without the possibility of parole. Thomas too asserted that his sentence was grossly disproportionate to his crime of setting his jail cell on fire, which he characterized as a misdemeanor. *Id.* at 478. The Court found that "Thomas's sentence did not exceed the maximum term allowed by statute and thus was not grossly disproportionate." *Id.* at 480 (citing *Mingo v. State*, 944 So. 2d 18, 34 (Miss. 2006)). Noting Thomas's long history as a repeat offender, the Court found no merit to Thomas's Eighth Amendment argument. *Thomas*, 48 So. 3d at 480-81.

¶71.   In *Long v. State*, 52 So. 3d 1188 (Miss. 2011), Long was convicted of selling a

controlled substance within 1,000 feet of a park. As an habitual offender, Long was sentenced to life in prison without the possibility of parole. *Id.* at 1190. Long argued that the trial court erred by sentencing him to life in prison. *Id.* at 1196. Once again, this Court held that Long's sentence was "within the complete discretion of the trial court, [and] this Court finds that the trial court did not err in sentencing Long as an habitual offender under Mississippi Code Section 99-19-83." *Id.* at 1197. The Court further held that Long's challenge that his sentence was grossly disproportionate to his crime lacked merit and that the trial court was not required to perform an Eighth Amendment proportionality test.[15] This Court affirmed the Long's sentence. *Id.*

¶72.    In *Taylor v. State*, 122 So. 3d 707 (Miss. 2013), Taylor was convicted of possession of a controlled substance in a prison facility and was sentenced to life imprisonment without the possibility of parole. Taylor argued that the trial court erred by sentencing him under Section 99-19-83. The Court of Appeals affirmed the conviction. *Id.* at 708. After granting certiorari, this Court affirmed Taylor's sentence of life imprisonment under Section 99-19-83. *Id.* at 716.

¶73.    In *Rice v. State*, 134 So. 3d 292 (Miss. 2014), Rice was convicted of auto burglary and sentenced as an habitual offender to life imprisonment without the possibility of parole. On direct appeal, the Court of Appeals "considered and rejected Rice's Eighth Amendment argument on direct appeal, [thus] the doctrine of res judicata bars him from raising it again." *Id.* at 300. After granting certiorari, we affirmed the sentence.

---

[15] However, the trial court did conduct such a review and found Long's sentence was not unconstitutionally disproportionate. *Id.*

Notwithstanding the procedural bar, we find Rice's argument here to be without merit. Sentencing is within the complete discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute. *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991) (citations omitted). Rice was convicted of three separate felonies prior to his conviction in Cause 4. The State used two of these prior convictions to charge Rice as a habitual offender in Cause 4. After determining that the State had satisfied the elements of Section 99-19-83, the trial court sentenced him to life without parole. Rice's sentence was within the limits set by the statute. We find that Rice's sentence does not "[lead] to an inference of 'gross disproportionality[,]'" such that an extended proportionality analysis is warranted. *Wilkerson v. State*, 731 So. 2d 1173, 1183 (Miss. 1999) (quoting *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996)).

*Rice*, 134 So. 3d at 300.

¶74. This Court recently confirmed the limited and narrow exception to the general rule that "a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Nash v. State*, 293 So. 3d 265, 268 (Miss. 2020) (internal quotation mark omitted) (quoting *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992)). Justice Maxwell, writing for the Court, held that:

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)).

In years past, this Court reviewed proportionality using the three-part test from *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996). But "*Solem* must now be viewed in the light of *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680 . . . ." *McGruder* [*v. Puckett*], 954 F.2d [313,] 315 [(5th Cir. 1992)].

*Nash*, 293 So. 3d at 268-69 (emphasis added) (footnotes omitted). In *Nash*, while not

charged as an habitual offender, this Court found that no *Solem* analysis was required because the sentence, although severe, did not invoke an inference of gross disproportionality, because it was within the statutory limits. *Id.* at 270.[16] Today's case is no different.

¶75. The cases discussed above are clear and convincing examples of cases in which this Court has upheld an enhanced sentence of life imprisonment without the possibility of parole under Section 99-19-93. Other cases utilizing different statutes have arrived at the same

[16] While *Nash* relied on *Graham*, for the proposition that Justice Kennedy's opinion in *Harmelin* concluded "extreme sentences that are 'grossly disproportionate' to the crime" were forbidden, *Nash*, 293 So. 3d at 269 (citing *Graham*, 560 U.S. at 59-60 (quoting *Harmelin*, 501 U.S. at 997 (Kennedy, J., concurring in part and concurring in judgment)), that case is factually dissimilar. The defendant in *Graham* was sixteen years old when the crime was committed. *Graham*, 560 U.S. at 53. Graham was sentenced to life imprisonment without the possibility of parole after a probation violation. *Id.* at 57. The sole issue in *Graham* was "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." *Id.* at 52. When Graham committed his crime, he was sixteen years of age. *Id.* at 53. Graham pled guilty to armed burglary and attempted armed robbery and was sentenced to probation and time already served. *Id.* at 53-54. Less than six months later and approximately a month before his eighteenth birthday, Graham was arrested again after participating in armed robberies and fleeing from the police. *Id.* at 54-55. The Supreme Court was presented with the issue of whether a life sentence for a **juvenile** satisfied the goals of our penal system: "retribution, deterrence, incapacitation, and rehabilitation . . . ." *Id.* at 71 (citing *Ewing*, 538 U.S. at 25). The Supreme Court held those goals were not met with sentencing a juvenile to life in prison who did not commit a homicide. *Id.* at 82. Today's case does not involve a juvenile, but an adult recidivist. While the Supreme Court pondered if juvenile offenders might be rehabilitated given the opportunity, Russell, an adult, affirmatively has demonstrated just the opposite. Long sentences of incarceration failed to deter or rehabilitate Russell, nor did all of the breaks he received. He was given chance after chance through concurrent sentences, participation in the RID program, probation, house arrest, and parole. These breaks and less severe sentences did not alter Russell's behavior. Russell has shown no evidence of character improvement and no evidence of rehabilitation. His chosen life of crime has left isolation in prison as the only alternative for the protection of society.

result. For example, in ***Tate v. State***, 912 So. 2d at 934, this Court affirmed Tate's conviction of possession and delivery of marijuana. He received two sentences of sixty years in prison, to run concurrently, without the possibility of early parole or release. ***Id.*** at 922-23. Because of his status an habitual offender, being twice convicted of two other felonies, Tate was given an enhanced sentence pursuant to Mississippi Code Section 99-19-81. ***Id.*** Tate argued that such a sentence was cruel and unusual punishment under ***Solem***, 463 U.S. 277. The Court held that Tate was sentenced "within the statutory guidelines prescribed by the Legislature for the crime for which he was convicted." ***Id.*** at 933. The Court further held that

> [t]hough certainly harsh, Tate's sentence is not "grossly disproportionate" to his crime. It is within the Legislature's prerogative to determine that three crimes such as those committed by Tate can result in a sentence of sixty years without parole or chance of early release. The Legislature has made its decision, and we may not impose our own opinion on the issue, absent a constitutional violation which we do not find.

***Id.*** at 934.

¶76.    While Tate was sentenced as an habitual offender under Section 99-19-81 and not Section 99-19-83, our holding is most instructive. If one only looks at the conviction for the last crime committed in a vacuum, many sentences might be considered harsh. However, the law requires consideration of all prior offenses and all attempts to utilize less severe sentences. Sentences such as Russell's are reserved for only those previously convicted felons who repeatedly refuse to abide by the laws of our state after wasting multiple opportunities to correct behaviors.

¶77.    Presiding Judge Carlton, writing for five members of the Court of Appeals, opined

39

Russell's case similar to ***Wall v. State***, 718 So. 2d 1107 (Miss. 1998). In ***Wall***, this Court affirmed Wall's conviction of marijuana and his sentence of life without parole based on his status as an habitual offender. 718 So. 2d at 1109. Today's case is no different.

¶78. The law in our state and nation is replete with cases holding that it is the legislative bodies who are given broad authority to establish sentences for all crimes, including habitual offenders. In enacting Section 99-19-83, the Mississippi Legislature determined that, for persons refusing to give up their life of crime and who are convicted and sentenced as habitual offenders, the only sentence which offers protection to society is isolation in prison without the possibility of parole. Only the rarest and most extraordinary cases require a trial court to conduct a proportionality review. Today's case is neither. The narrow threshold was not only missing, but the claim was neither raised nor advanced at trial.

¶79. All courts in this state are required to follow statutory law. I am uncertain whether the scenario included in the majority's opinion is a requirement or an aspiration. *See* Maj. Op. ¶ 32 n.4. If it is a suggestion, it is a worthy idea, and I would encourage the legislature to amend the statute to reflect same. At present, the punishment for Russell for his numerous misdeeds is a legislative question. *See* Maj. Op. ¶ 30.

¶80. The statute requires that a defendant must have two prior convictions, serving at least one year per conviction, and one conviction must be for a violent offense. Miss. Code Ann. § 99-19-83. When these conditions are satisfied, a defendant faces life imprisonment. *Id.* These qualifications were met in today's case, as they were met in ***Wall***, and in a host of other cases cited above. Russell's life imprisonment sentence was within the sound discretion

of the trial court. The trial court adhered to stare decisis and made a constitutionally sound sentencing decision, without objection.

¶81. Russell was given numerous chances, yet he squandered every one. Russell, through his own actions, has evinced incorrigibility, despite multiple opportunities to reform his criminal ways, showing no evidence of remorse, and exhibiting no evidence of rehabilitation. Statutes like Section 99-19-83 were the Legislature's response to protect law-abiding citizens. Russell has shown a propensity for multiple years to commit crimes and to violate the rights of his fellow man and the laws of our state and nation. Prior attempts to deter and reform him have failed. Multiple shorter incarceration periods have failed to dissuade Russell. The Legislature declared life imprisonment is necessary to protect society. When this occurs, the Legislature mandates life imprisonment without the possibility of parole.

¶82. Based on both this Court's precedent and the rulings of the United States Supreme Court in *Rummel*, 445 U.S. 263, *Harmelin*, 501 U.S. 957, *Andrade*, 538 U.S. 63, and *Ewing*, 538 U.S. 11, Russell's sentence as an habitual offender was not grossly disproportionate. His sentence meets the prescribed statutory punishment. There is no legal basis to vacate Russell's sentence. It is neither cruel nor unusual. As Russell has failed to prove that the threshold requirement of gross disproportionality was offered and met, because his sentence fell within the statutory requirement, and because his sentence is a constitutionally permissible sentence, we should affirm Russell's conviction and sentence.

**BEAM AND ISHEE, JJ., JOIN THIS OPINION. MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**

**COLEMAN, JUSTICE, DISSENTING:**

¶83. Like Presiding Judge Wilson and the four Mississippi Court of Appeals judges who joined his opinion, *Russell v. State*, No. 2019-KA-01670-COA, 2021 WL 1884144, at **4-8, (¶¶ 15-29) (Miss. Ct. App. May 11, 2021) (Wilson, P.J., dissenting), I discern no material difference in today's case and *Solem v. Helm*, 463 U.S. 277 (1983). The majority affirms not based on identifying any material distinction between Russell's and Helm's, but based on Russell's failure to offer evidence.

¶84. The majority cites two differences, but I disagree that they are material. First, the majority points out that one of Russell's predicate felonies was for burglary. As Judge Wilson wrote, burglary was not considered a *per se* crime of violence until Mississippi Code Section 97-3-2 made it so as a matter of law on July 1, 2014. *Russell*, 2021 WL 1884144, at *5 (¶ 20). Russell pled guilty to two counts of burglary in 2004. Prior to July 1, 2014, burglary was only considered a crime of violence if actual violence took place during the burglary. *Id.* We do not know whether Russell's burglaries involved actual violence, but the fact that he was allowed the opportunity by the sentencing court to participate in the Regimented Inmate Discipline Program tends to indicate they did not. *Id.*

¶85. Second, the majority points to Helm's record of alcohol use. The *Solem* Court identified three "objective factors" for courts to consider *Id.* at 290. First, the gravity of the offense and harshness of the penalty. *Id.* Second, sentences imposed on other criminals in the same jurisdiction. Third, sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 291-92. The effect of Helm's use of alcohol does not weigh into any of the above-listed objective factors. While the *Solem* Court went on to discuss other,

subjective, principles, the lack of an impact of the use of alcohol on the objective ones leads me to conclude that it is not material.

¶86. Recent developments in Mississippi and elsewhere concerning the treatment of marijuana possession arguably provide a material difference between *Solem* and Russell that favors Russell as to the objective factors. In the past year, the state of Mississippi joined many of its sister states in adopting a medical marijuana program. Pursuant to the bill creating the program, the difference going forward between going to jail for possessing 2.5 ounces of marijuana and owning it legally would be a prescription. *See* S.B. 2095, 2022 Miss. Laws. For better or for worse, the adoption of a medical marijuana in Mississippi is in keeping with a nationwide change on the treatment of marijuana in the law. An April 2021 law journal article points out that thirty-six states now have medical marijuana programs, and fourteen states and the District of Columbia now allow its recreational use. Paul J. Larkin, Jr., *Cannabis Capitalism,* 69 Buff. L. Rev. 215, 216-217 (2021). Less than thirty years ago, however, all states and the federal government outlawed its distribution. *Id.* Whether it be wisdom or folly, the above-described move toward decriminalizing the use of marijuana considered in light of the first objective *Solem* factor, *i.e.*, the gravity of the offense and the harshness of the penalty, surely weighs in favor of Russell. There appears to be no similar widespread movement to legalize "uttering a 'no account' check[.]" *Solem*, 463 U.S. at 281.

¶87. It is worth noting that the majority acknowledges that Russell's sentence "appears grossly disproportionate" when compared to the sentence for the crime for which he was

convicted. Maj. ¶ 29. The majority undertakes the task of offering procedural guidance to courts faced with defendants in the same position as that in which Russell finds himself, yet it denies Russell himself the benefit of its guidance. In so doing, the majority leaves Russell in prison for the rest of his life subject to a sentence that, based on the striking and unrefuted similarity of Russell's case to *Solem*, in all likelihood violates the Eighth Amendment prohibition against cruel and unusual punishment.

¶88. Although the chief justice cites several cases issued by the Supreme Court of the Unites States after *Solem* none of them overrule it. As Presiding Judge Wilson wrote, "when the United States Supreme Court has held that a particular sentence is unconstitutional in a case that is not materially distinguishable from the case in front of us, we are obliged to apply the Supreme Court's decision and vacate the sentence." *Russell*, 2021 WL 1884144, at *8 (¶ 29) (citing *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965)). I would add to Presiding Judge Wilson's words that, given the above-described change in the treatment of marijuana use in the law across the country over the past three decades, the most material difference between Russell's situation and that of Helm actually weighs in favor of Russell.

¶89. I do not here go so far as to contend that Russell's sentence *per se* violates the Eighth Amendment. Rather I argue that, in light of the marked similarities between Russell's situation and Helm's and the majority's own acknowledgment that the guidance now in place for courts to consider the issue of disproportionate sentences requires classification, the matter should be remanded for a new sentencing hearing.

¶90.    I would vacate Russell's sentence and remand the case to the trial court for resentencing.

**KITCHENS AND KING, P.JJ., JOIN THIS OPINION.**